[No. 5154.  En Banc.  June 8, 1995.]

*In the Matter of the Disciplinary Proceeding Against*
PAUL G. GILLINGHAM, *an Attorney at Law.*

*Paul G. Gillingham,* pro se, and *E. Douglas Pibel, Jr.,* for petitioner.

*Maria S. Regimbal, Disciplinary Counsel,* for Bar Association.

[As amended by order of the Supreme Court July 11, 1995.]

DURHAM, C.J. — Attorney Paul Gillingham appeals to this court from an order of the Disciplinary Board of the Washington State Bar Association (Board) suspending him from practice for violating the Rules of Professional Conduct (RPC). Gillingham concedes violations in that he obtained a loan from a client without meeting the proper safeguards and drafted a will in which he was named as a beneficiary. However, both bar counsel and the Board agree Gillingham repaid the loan with interest and did not receive any proceeds from the will.

A complaint was brought against Gillingham by the attorney for the personal representative of the estate of Edith Liebel. The hearing examiner found three counts of misconduct were proved, and recommended suspension from the practice of law for 1 month. Gillingham appealed to the Board, but failed to appear for the hearing due to miscommunication. After an uncontested presentation by bar counsel, the Board ordered Gillingham suspended for 12 months. We reverse the Board's order and adopt a 60-day suspension.

## FACTS[1]

The attorney-client relationship between Gillingham and Liebel forms a necessary backdrop to the present matter. It began around 1976 when Gillingham started representing Liebel in connection with legal difficulties engendered by Liebel's mother, Clara Sommers. Sommers owned a large number of properties in Seattle. During the mid-70's, Sommers was repeatedly cited for various building, zoning, fire, and health code violations. Apparently in order to avoid

---

[1]The record includes transcripts of the proceedings before the hearing examiner and the Board. The former transcripts are in two volumes and will be referred to as TP I or TP II, together with page number. Various other loose documents will be referred to by title and page number. In the future, for ease of reference, the record in attorney discipline matters should conform to the format for clerk's papers and be page stamped in a single sequence.

accountability for the violations, Sommers devised the tactic of quitclaiming the deed to the properties to someone else. Some of the people she used had been dead for many years, some were ex-husbands, and she frequently quitclaimed property to her daughter, Liebel.

This practice created certain difficulties, among them that Sommers had transferred the properties to Liebel without advising Liebel of the transfer. Gillingham began representing Liebel in relation to a health code violation regarding one of the properties Sommers had transferred to her. He eventually discovered some 21 properties deeded to Liebel by her mother. Gillingham assisted Liebel by clearing title to the properties, selling the properties, and initiating a guardianship for Liebel's mother. As a result of his efforts, Liebel eventually received approximately $600,000.

Over the course of the professional relationship, Gillingham and Liebel became friends. In 1984, Gillingham drafted Liebel's will at her request. According to Gillingham, after initially protesting, he agreed to draft the will. Under the will, he was named the executor of Liebel's estate and was also named a 10 percent beneficiary.

In 1987, Gillingham made amendments to the will pursuant to Liebel's instructions. Under the 1987 will, Gillingham became a beneficiary of 20 percent of Liebel's estate, and was named as the executor of the estate. In 1989, Liebel changed her will to exclude Gillingham from participating in her estate as a beneficiary, and she appointed Joan Meryhew as her personal representative. Liebel died in March 1990, and in June 1990 Gillingham filed pleadings to contest the change in her will. However, Gillingham did not complete service on one of the parties and abandoned the will contest.[2]

---

[2]There is a vigorous factual controversy in the record concerning Gillingham's motives in initiating the will contest. He contends he initiated the contest at the request of Liebel's aunt, who became concerned about the validity of the will when she noticed Liebel's request that she be cremated. Bar counsel claims he was selfishly pursuing a stake in the estate.

In 1987, Gillingham started a wine importing company called "Riservati". In 1988, Ms. Liebel offered to give $25,000 to Riservati. Gillingham ultimately agreed to accept the money as a loan if Ms. Liebel would draw up a repayment schedule. Other testimony before the hearing examiner corroborated Gillingham's claim that the money was originally intended as a gift. Nevertheless, Liebel prepared a payment schedule containing principal and interest balances, which includes a column titled "10% interest". Gillingham repaid the entire amount due with interest.

After Liebel died in 1990, her personal representative hired attorney Eileen Lawrence to investigate certain aspects of Gillingham's representation of Liebel. Lawrence brought a civil suit against Gillingham and also initiated the present bar complaint.[3] After conducting an investigation, the bar association brought five counts of misconduct[4] against Gillingham pursuant to the Rules for Lawyer Discipline. A hearing was held before a hearing examiner in June 1993. The

---

[3]Lawrence wrote to bar counsel requesting "the disciplinary counsel to immediately take all action appropriate to pursue appropriate disciplinary proceedings regarding these complaints and not wait until the civil litigation is resolved". TP II Ex. 16. As a general rule, the bar association does not take action on disciplinary matters when a civil proceeding is pending addressing the same issues. It is not at all clear why the bar association departed from this sensible policy in view of the direct interest Lawrence had in testifying against Gillingham at the disciplinary proceeding. In fact, Gillingham has now filed a bar complaint against Lawrence for knowingly making false statements of material fact to the hearing examiner. The bar's policy prevents this kind of imbroglio, and also conserves the bar's limited resources.

[4]The five counts read as follows:

"Count I

"Mr. Gillingham is subject to discipline under RLD 1.1(i), through violation of RPCs 1.8(a) and 1.8(c), for entering into loan transaction with his client, Ms. Liebel, without giving written disclosure and without paying a fair interest rate given the risk of the investment.

"Count II

"Mr. Gillingham is subject to discipline under RLD 1.1(i), through violation of DR 5-101(A), for drafting the first will, in which he was named as a beneficiary of the estate of his client, Ms. Liebel, while he was representing Ms. Liebel.

"Count III

"Mr. Gillingham is subject to discipline under RLD 1.1(i), through violation of RPC 1.8(c), for drafting the second will, in which he was named as a beneficiary

hearing examiner found that counts 1, 2, and 3 were proved. Count 4 was dismissed by the bar association, and count 5 was dismissed for insufficient evidence by the hearing examiner. The hearing officer recommended a sanction of suspension for 1 month.

Gillingham appealed to the Disciplinary Board. The Board scheduled a hearing, but as a result of what appears to have been a miscommunication with his lawyer, neither Gillingham nor his attorney attended the hearing. After an uncontested presentation by bar counsel, the Board made a number of additional findings of fact, deleted mitigating circumstances found by the hearing officer, and added two aggravating circumstances. The Board declined, however, to disturb the hearing officer's dismissal of count 5. Bar counsel recommended a 6-month suspension. The Board voted to increase the sanction from the 1-month suspension imposed by the hearing examiner to a 12-month suspension. Two members dissented.

Only counts 1-3 are before us here, and Gillingham concedes violations of the RPC with respect to counts 1 and 3. We must, therefore, decide only (1) whether count 2 is in error; (2) whether a 12-month suspension is the appropriate sanction for the misconduct detailed in counts 1 and 3; and, if not, (3) what the appropriate sanction is.

## STANDARDS IN ATTORNEY DISCIPLINE MATTERS

■ Attorney misconduct is defined by the RPC, and any violation of the RPC may be grounds for attorney discipline.

---

of the estate of his client, Ms. Liebel, without meeting written disclosure and fairness requirements.

"Count IV

"If Mr. Gillingham was not aware that his paralegal drafted the second will, he is subject to discipline under RLD 1.1(i), through violation of RPC 5.3(b) and 5.3(c), for failing to adequately supervise his paralegal.

"Count V

"Mr. Gillingham is subject to discipline under RLD 1.1(i), through violation of RPC 1.4(a) and 1.4(b), for failing to keep Ms. Liebel apprised of the status of her case and to explain matters adequately to allow Ms. Liebel to make an informed decision regarding the sales of her real property." Report to Disciplinary Bd. (Oct. 11, 1993), at 6-7.

RLD 1.1(i) (incorporating the RPC into the RLD). The appropriate level of sanction for a given violation is determined by reference to the *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986) (*ABA Standards*). *In re Johnson*, 118 Wn.2d 693, 701, 826 P.2d 186 (1992). Under the RLD, bar counsel has the burden of establishing acts of misconduct by a clear preponderance of the evidence. RLD 4.11(b).

■■ While we normally accord greater weight to the Board than to the hearing officer with regard to the recommended sanction, the responsibility for determining the nature of discipline ultimately rests with this court. *Johnson*, 118 Wn.2d at 703. We will decline to adopt the Board's recommended sanction if we are convinced by one or more factors that the recommendation is inappropriate. *Johnson*, 118 Wn.2d at 703. The relevant factors include the purposes of attorney discipline, the proportionality of the recommended sanction to the misconduct, the effect of the sanction on the attorney, the record developed by the hearing panel (including whether the sanction is fairly supported by the record), and the extent of agreement among the members of the Board. *Johnson*, 118 Wn.2d at 703. As we indicate in more detail below, we are persuaded that a 12-month suspension for the misconduct at issue here is disproportionate to the misconduct, is not fairly supported by the record before the Board, and is not supported by a unanimous recommendation of the Board.

### SPECIFIC COUNTS OF MISCONDUCT

We will first discuss the validity of count 2, and then the appropriate sanction for counts 1 and 3.

Count 2 alleges Gillingham engaged in misconduct in 1984 by drafting a will in which he was named a beneficiary. The hearing officer found, and the Board affirmed, that:

> Respondent Gillingham's conduct in naming himself as a beneficiary of the estate of Ms. Liebel violated RLD 1.1(i) in that it violated DR 5-101(A).

Hearing Officer's Findings of Fact, at 8. Because the current Rules of Professional Conduct were not adopted until September 1, 1985, the previous Code of Professional Responsibility applies to the drafting of the 1984 will. Under that code, Disciplinary Rule 5-101(A) provided that:

> Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

There is one major defect with this count. As Gillingham notes, 1 year *after* the will was drafted, this court specifically found that while such conduct was to be strongly discouraged, it did not violate the Code of Professional Responsibility. In that case, which involved an attorney who drafted a will in which he was a beneficiary, we stated:

> While we do not hold . . . that this violates the Code of Professional Responsibility, it is an activity of which we disapprove, in which we believe no attorney should engage, and which should not occur in the future.

*In re Estate of Shaughnessy*, 104 Wn.2d 89, 97, 702 P.2d 132 (1985). Bar counsel contends that *Shaughnessy* is distinguishable, since there the court found the attorney had acted in good faith. However, *Shaughnessy* did not make its holding dependent on an absence of bad faith. Moreover, even if it had, there is no clear preponderance of evidence that Gillingham acted in bad faith in drafting the 1984 will. We conclude therefore that count 2 is predicated on an error of law and must be dismissed.

We next turn to the appropriate sanction for count 1, which concerns the loan Gillingham obtained from Liebel. The *ABA Standards* govern attorney discipline cases in Washington. *Johnson*, 118 Wn.2d at 701. Determining the appropriate sanction involves a 2-stage process.

> First, we determine a presumptive sanction by considering (1) the ethical duty violated, (2) the lawyer's mental state and (3) the extent of the actual or potential harm caused by the mis-

conduct. Then, we consider any aggravating or mitigating factors which may alter the presumptive sanction.

*Johnson*, at 701. Gillingham concedes he violated the rule which governs entering business transactions with a client. Our inquiry is to determine the proper sanction for an attorney who accepted a loan from a client, where the loan initially was intended as a gift from the client and the loan was repaid in full.

RPC 1.8(a) determines the ethical duty violated. It provides that:

A lawyer who is representing a client in a matter:

(a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents thereto.

The rule requires that the business transaction and its terms be (1) fair and reasonable, (2) fully disclosed and transmitted in writing to the client, (3) in a way the client can understand, (4) the client must consent, and (5) the client must be given a reasonable opportunity to seek the advice of independent counsel. The loan transaction at issue was fair and reasonable to Liebel. It provided for repayment with interest. In fact, the repayment schedule was drawn up by Liebel and is in her own handwriting. It is reasonable to infer from this fact that the transaction was communicated to Liebel in a way that she could understand, and that she consented to it. Finally, Gillingham claims he urged Liebel to seek independent counsel.[5] However, Gillingham did not fully disclose and

---

[5]While the rule does not explicitly require that this opportunity be given in writing, the prudent attorney will advise the client in writing to seek the advice of independent counsel. A prudent attorney will normally obtain the consent of the client in writing as well. *Compare* Washington's RPC 1.8(a)(3) ("The client consents thereto.") *with* Model Rules of Professional Conduct 1.8(a)(3), 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the*

transmit *in writing* to Liebel the terms of the loan. Therefore, the transaction at least technically violates RPC 1.8(a).

Next we consider Gillingham's state of mind in committing the misconduct.[6] Did Gillingham negligently, knowingly, or intentionally engage in misconduct regarding the loan? The evidence strongly suggests negligence. RPC 1.8(a) does not flatly prohibit business transactions with clients. It allows such transactions, provided certain conditions are met. While Gillingham did not fully meet all the conditions, the violation is not egregious and is consistent with negligence, since it complies roughly with the spirit of RPC 1.8(a). Further evidence for a negligent state of mind may be educed from the record. The hearing officer found that Liebel initially offered the money as a gift. Depending on the surrounding circumstances, it may be true that Gillingham could have accepted the money as a gift without violating the terms of RPC 1.8(c).[7] Instead, he accepted the money as a loan. We conclude that Gillingham negligently failed toabide by RPC 1.8(a).

---

*Model Rules of Professional Conduct* App. 1, Rule 1.8(a)(3), at 1003 (2d ed. 1993) ("[T]he client consents in writing thereto.").

[6]The *ABA Standards* define three types of mental state:

" 'Intent' is the conscious objective or purpose to accomplish a particular result.

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular task.

" 'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *ABA Standards for Imposing Lawyer Sanctions* 17 (Approved Draft, 1986).

[7]The RPC governing gifts does not forbid attorneys from accepting gifts from clients. RPC 1.8(c). Instead, it "establishes a general prohibition against a lawyer's drafting an instrument giving her or him or a close relative a substantial gift from a client." 1 Hazard & Hodes, at 269 (2d ed. 1994). We accept as a verity on appeal the unchallenged finding of fact that Liebel initially gave the $25,000 to Riservati.

We emphasize that although RPC 1.8(c) does not specifically prohibit cash gifts from clients, neither are such gifts always permissible. For example, accepting cash gifts from clients without adequate documentation that the gift

Third, we examine the extent of harm. Since Gillingham fully repaid the loan with the interest stipulated by Liebel, there is no actual harm. However, the *ABA Standards* impose sanctions for either actual or potential injury to a client. *See ABA Standards* Std. 4.1, at 26. Bar counsel argues that Gillingham caused Liebel potential injury by not securing the loan.

The *ABA Standards* explicitly define "potential injury" as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable *at the time of the lawyer's misconduct,* and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." (Italics ours.) *ABA Standards,* at 17. If Liebel fully intended the loan initially to be a gift, and it was only at Gillingham's insistence that she agreed to convert it to a loan, then it is unclear exactly what the harm was that was reasonably foreseeable by Gillingham at the time he entered into the loan transaction. Bar counsel seems simply to assume a potential harm existed. It is true that had Liebel been seeking an investment opportunity, an unsecured loan would represent a potential injury. However, the evidence suggests that Liebel's purpose in making the loan was not to invest in a business but to convey a gift in a form acceptable to Gillingham. If that was her purpose, the lack of a formal security interest did not constitute a potential injury to Liebel.

■ Finally, we factor in any aggravating or mitigating circumstances relevant to this count. Bar counsel asserts that Liebel was a vulnerable victim, an aggravating circumstance under the *ABA Standards.* The hearing officer included vulnerability of the victim as an aggravating factor. However, as to the loan, this appears to have been an extrapolation from the finding of fact that Liebel was an unsophisticated and difficult client. While the record is clear that Liebel was a difficult client, it is at best equivocal on the subject of

---

is made in a fully informed and voluntary manner may expose an attorney to a civil action for breach of the heightened fiduciary duty lawyers owe to clients.

sophistication. Moreover, the phrase "unsophisticated" does not automatically equate with the term "vulnerable". *See generally People v. Lanza*, 613 P.2d 337 (Colo. 1980) (cited by *ABA Standards* as illustrative of vulnerability of victim aggravating factor).

The *ABA Standards* provide that "[a]dmonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client." *ABA Standards* Std. 4.14, at 28. The *ABA Standards* also provide that "[r]eprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *ABA Standards* Std. 4.13, at 27. We conclude that had Gillingham been guilty of only this violation, he would deserve an admonition. However, the parallel ethical violation regarding Liebel's will is far more serious and calls for a stronger sanction. To that violation we now turn.

Count 3 of the bar's formal complaint alleges that Gillingham violated RPC 1.8(c)[8] by revising Liebel's will in 1987 without removing himself as a beneficiary.[9] Gillingham again concedes a violation but contends there was only potential rather than actual injury to Liebel, since she later

---

[8]RPC 1.8(c) provides that:

"A lawyer who is representing a client in a matter:

". . . .

"(c) Shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

[9]Count 3 reads:

Mr. Gillingham is subject to discipline under RLD 1.1(i), through violation of RPC 1.8(c), for drafting the second will, in which he was named as a beneficiary of the estate of his client, Ms. Liebel, *without meeting written disclosure and fairness requirements.*

(Italics ours.) Report to Disciplinary Bd. (Oct. 11, 1993), at 7. It is unclear what the italicized language means, since RPC 1.8(c) flatly prohibits a lawyer from preparing an instrument giving the lawyer a testamentary gift from a client. It does not include any disclosure or fairness provisions. Although this version of count 3 was appended to the Report to Disciplinary Board, an amended formal complaint eliminated the italicized language. See findings of fact, conclusions of law, and hearing officer's recommendation, at 1-2.

removed him from the will when she had the will revised by another attorney in 1989.

■  Again, we determine the presumptive sanction by considering (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct, and then consider aggravating or mitigating factors which may alter the presumptive sanction. *Johnson*, 118 Wn.2d at 701. The duty violated is the duty of lawyers not to prepare an instrument giving the lawyer a substantial gift from a client, including a testamentary gift. RPC 1.8(c). This duty is a specific application of the basic conflict of interest principles of RPC 1.7. 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 261 (2d ed. 1992). The basic principles govern situations in which the lawyer's own self-interest threatens to adversely affect or even destroy the quality of the representation to be provided. *See* 1 Hazard & Hodes, at 161.

Gillingham's mental state was either intent, knowledge or negligence. A lawyer who drafts a will in which he or she is named a beneficiary is involved in a facial and obvious conflict of interest. Any lawyer who ignores this conflict of interest is guilty not of mere negligence but of ignoring what he or she knows or should know. In any event, Gillingham could not have remained ignorant of the conflict of interest: he stood to gain 20 percent of Liebel's estate. Moreover, Gillingham knew or should have known the RPC eliminate the conflict of interest inherent in a lawyer's drafting a will from which he or she substantially benefits by banning the practice. We conclude Gillingham acted with knowledge, that is, with "the conscious awareness of the nature or attendant circumstances of the conduct". *ABA Standards*, at 17.

As for the extent of harm, no actual harm resulted since Gillingham received no portion of the estate. However, the potential harm was extreme. What Gillingham did is banned for good reason. The RPC prohibit lawyers from

drafting wills in which they receive substantial gifts because the practice is inherently permeated with the dangers of self-dealing and undue influence. *See* 1 Hazard & Hodes, at 261. The failure to have the instrument drafted by uninvolved counsel not only deprived Liebel of an independent point of view but also exposed her to the inherent conflict of interest the rule is designed to eliminate.

Gillingham evidently made the 1987 revisions to Liebel's will pursuant to her instructions. Ex. 35. Nevertheless, the fact remains that the RPC explicitly prohibit exactly what Gillingham did, whether or not it was according to Liebel's instructions. Unlike the other rules governing conflicts of interest, the prohibition on testamentary gifts which are drafted by the lawyer-beneficiary does not include an exception when the client gives informed consent. *Compare* RPC 1.8(c) *with* RPC 1.7; RPC 1.8(a), (b), (f), (g). Furthermore, Liebel's instructions may have been much different had she been given the benefit of independent counsel.

Finally, we consider aggravating or mitigating factors. Unlike the Board, we discern no significant mitigating or aggravating factors other than those considered by the hearing officer. The hearing officer found three aggravating factors: a prior disciplinary offense (Gillingham received an admonition in 1986), a selfish motive, and vulnerability of the victim.[10] The hearing officer found two mitigating factors, absence of a dishonest motive and a cooperative attitude toward the proceedings.

The mitigating and aggravating factor analysis conducted by the Board is unpersuasive. The Board added two aggravating factors based on the *ABA Standards*, the first for "[s]ubmission of false evidence, false statements, or other deceptive practices during the disciplinary process", the second for "[r]efusal to acknowledge wrongful nature of the

---

[10]As we indicated above, the vulnerable victim factor is questionable in the present context. *See also In re Johnson*, 118 Wn.2d 693, 706, 826 P.2d 186 (1992) (trust relationship alone does not create vulnerable victim, since all clients are presumably in a trust relationship with their attorneys).

conduct". Order on hearing officer's findings of fact, conclusions of law and recommendation, at 5. As the phrase, "or other deceptive practices" makes clear, a simple misstatement of fact is not the same as a false statement. There is no evidence that the two misstatements cited by the Board were false or deceptive statements. As to the second aggravating factor, the record clearly shows Gillingham repeatedly acknowledging the wrongful nature of his conduct.

We conclude that the Board's attempt to add aggravating factors is not supported by the record. The doubling of the sanction proposed by bar counsel is largely inexplicable. The fact that neither Gillingham nor his attorney appeared before the Board may have led to the assumption that the absence was deliberate. See Dissent to Bd. order Ex. 48.

## APPROPRIATE SANCTION

Because we decline to adopt the Board's recommended sanction, we must independently determine the appropriate sanction for Gillingham's misconduct. Suspension is generally appropriate "when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes actual injury or potential injury to a client." *ABA Standards* Std. 4.32, at 30. A reprimand is generally appropriate "when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests . . . and causes injury or potential injury to a client." *ABA Standards* Std. 4.33, at 31. Gillingham either knew or should have known of the facial conflict of interest inherent in drafting a will for a client in which he was named a beneficiary. Given the mental state of knowledge, the facial and obvious nature of the conflict of interest, the potential for serious injury to the client, and what Gillingham conceded to be his "casual" attitude toward the Rules of Professional Conduct, we find suspension to be the appropriate sanction for Gillingham's violation of RPC 1.8(c).

Having found suspension to be the appropriate sanction, we turn to the question of the duration of the suspen-

sion. We have previously emphasized our commitment to consistency in attorney discipline cases. *Johnson,* 118 Wn.2d at 704. Accordingly, we attempt to impose sanctions roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability. *See Johnson,* 118 Wn.2d at 703 (court will consider the proportionality of the sanction to the misconduct; sanction must not depart significantly from sanctions imposed in similar cases).

There appear to be no reported Washington cases in which an attorney violated the RPC's ban on the practice of preparing wills in which the attorney is a substantial beneficiary. However, as the court noted in *Shaughnessy* in construing the more vague provisions of former CPR Disciplinary Rule 5-101(A), "[I]t is an activity of which we disapprove, in which we believe no attorney should engage, and which should not occur in the future." *In re Estate of Shaughnessy,* 104 Wn.2d 89, 97, 702 P.2d 132 (1985). Both *Shaughnessy* and RPC 1.8(c) are clear and unambiguous. The practice which each unequivocally prohibits casts a pall of potential self-dealing and undue influence.

We view this practice with extreme censure. Given the seriousness of the misconduct, the clarity and force with which this court and the RPC proscribe it, and Gillingham's prior disciplinary history of one admonition, we find a suspension of 60 days appropriate. Accordingly, we order Gillingham suspended from the practice of law for 60 days.

DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN, BRACHTENBACH, and UTTER, JJ. Pro Tem., concur.

Reconsideration denied August 17, 1995.

THE NEXT PAGE IS NUMBERED 1001

to permit publication of the disposition of petitions for review in the advance sheets of the Washington Reports with permanent page numbers and make permanent citations immediately available.