[No. 8824.    En Banc.    March 19, 1992.]

*In the Matter of the Disciplinary Proceeding Against*
IVAN D. JOHNSON, *an Attorney at Law.*

694

*Maria S. Regimbal*, for Bar Association.

*Kurt M. Bulmer*, for respondent lawyer.

ANDERSEN, J. —

## FACTS OF CASE

This disciplinary matter comes to the court on the appeal of attorney Ivan D. Johnson who was admitted to practice law in the State of Washington in 1979. It concerns the proper sanction to be imposed where an attorney has engaged in business transactions with clients without making adequate written disclosures.

In 1980, Richard Hackler, then age 22, became permanently disabled as a result of an automobile accident and his parents became his full-time caregivers. In 1983, Richard received a settlement of the claim arising out of the accident.

Richard's father, Archie Hackler, was appointed Richard's limited guardian and managed Richard's estate under superior court oversight. As of 1983, Richard's parents, Archie and Erica Hackler, were compensated a set amount each month from the guardianship estate for their full-time care of Richard. These matters were handled by attorneys other than appellant Johnson.

In 1984, attorney Ivan D. Johnson began representing Archie Hackler in various matters, and by spring of 1985, Mr. Johnson represented Archie Hackler in guardianship matters relating to Richard's trust estate.

In June 1985, attorney Johnson asked Ron Hackler, Archie and Erica Hackler's other adult son, to loan him $10,000. Ron Hackler declined but asked his father to loan the money to Mr. Johnson. The Hackler marital community loaned Mr. Johnson $10,000 in June of 1985. Johnson prepared a promissory note secured by a deed of trust on the Johnson residence.

The initial draft of the promissory note reflected an interest rate of 18 percent, but Mr. Archie Hackler reduced the rate to 15 percent. These documents were not reviewed by an independent attorney.

The hearing officer found that attorney Johnson did not disclose his assets, liabilities, income or the existence of tax liens; neither did he provide a financial statement, appraisal of collateral or title report on the security. Apparently, Mr. Hackler was not reluctant to make the loan and asked few questions about it.

During 1985, Mr. Hackler met frequently with attorney Johnson to discuss means to earn a more favorable rate of interest on Richard's trust assets. Attorney Johnson made the following suggestions. The Richard Hackler trust would loan $60,000 to Archie Hackler by prepaying a part of the caregivers' allowance. This $60,000 loan would then be repaid to the trust each month by the trust's withholding a portion of the caregivers' allowance payable to the Hacklers. The Hacklers would pay the trust 13 percent interest and would secure the loan with a deed of trust on a piece of real estate owned by the Hacklers. The plan was that the $60,000 prepayment could then be invested by the Hacklers to obtain a more favorable rate of interest but with more risk than ordinarily allowed by court approved plans.

Immediately after the court's approval of the loan/prepayment to Mr. Hackler, attorney Johnson asked his client Mr. Hackler for a $60,000 personal loan to be secured by another deed of trust on the Johnson residence.

There was conflicting testimony at the disciplinary hearing regarding the timing of attorney Johnson's request for the second loan from the Hacklers.

However, the hearing officer concluded that bar disciplinary counsel had not proved that Mr. Johnson submitted pleadings to the Superior Court for approval of the care prepayment plan with the anticipated purpose of himself borrowing the money from Mr. Hackler.

The hearing officer found that Mr. Hackler is a reasonably prudent investor and had he known that attorney Johnson's

purpose in borrowing the money was to pay overdue employee and income taxes, pay off an encumbrance on his home and reduce credit card obligations incurred to run his law practice, he would not have made the loan.

Attorney Johnson orally told Mr. Hackler that his home was worth $125,000. This appears to have been fairly accurate, however, no title report, appraisal, or financial statement was provided to the Hacklers. Mr. Hackler ultimately declined to loan attorney Johnson the requested $60,000, but in November 1985 did loan him $20,000.

Mr. Hackler testified that he knew Mr. Johnson was hard pressed financially and that he desperately needed a $20,000 loan, and further, that he knew at the time he made the loan it was a risky one. He was also aware that Mr. Johnson was unable to repay the first loan on its original due date. The hearing officer found that attorney Johnson did not advise Mr. Hackler to seek separate counsel though Mr. Hackler had an opportunity to do so.

Attorney Johnson gave Hackler a $20,000 promissory note (13 percent interest per annum) and a deed of trust on his home. The Johnsons also gave the Hacklers a new promissory note for $10,700 (15 percent interest per annum) as a replacement note for the earlier $10,000 note which would have matured in December 1985.

In the spring of 1986, attorney Johnson informed Mr. Hackler he was going to file bankruptcy but that Mr. Hackler would still be repaid. Attorney Johnson filed Chapter 11 (reorganization) bankruptcy proceedings in May 1986. Mr. Hackler testified that he first learned of Johnson's extensive debts, tax liabilities and of a second mortgage on the Johnson residence from the bankruptcy schedules. In the bankruptcy, Mr. Johnson reaffirmed his debt to the Hacklers and in the reorganization plan agreed to pay them according to the contract terms.

Mr. Hackler invested the remaining $40,000 of care prepayment funds for a short time and subsequently repaid the entire loan to Richard's trust estate. Although attorney Johnson agreed in his Chapter 11 bankruptcy plan to repay

the Hacklers according to the contract terms, only two payments totaling approximately $5,500 had been made by him at the time of the disciplinary hearing. Mr. Johnson did, however, represent to this court at oral argument that payments have been made to the Hacklers during 1991 and that payments will continue to be made on a monthly basis pursuant to an agreement between Mr. Johnson and the Hacklers.

Based on the above described conduct, the bar association filed a complaint against attorney Johnson *alleging* the following seven counts of misconduct.

Count 1 — alleging a violation of CPR DR 5-104(A)[1] in requesting a loan (June 1985) from a client without written complete disclosure.

Count 2 — alleging violation of RPC 1.8 relating to doing business with a client and RPC 8.4(c) prohibiting misrepresentation in obtaining the loan of $20,000 (November 1985) without complete written financial statements which would have disclosed a precarious financial status and without written appraisal and title report on the security.

Count 3 — alleging violation of RPC 8.4(c) prohibiting misrepresentation in representing that the security for the November 1985 loan would be in second lien position when the property was already subject to two security interests.

Count 4 — alleging violation of RPC 3.3(f) requiring full disclosure of material facts to a tribunal in an ex parte proceeding and RPC 1.7(b) prohibiting representation of a client when limited by the lawyer's interest. This count also alleged violation of RPC 8.4(d) prohibiting conduct prejudicial to the administration of justice by submitting the prepayment plan to the Superior Court with the anticipated purpose of funding a loan to the lawyer without disclosure to the court of the true nature of the transaction.

---

[1]The Code of Professional Responsibility (CPR), 80 Wn.2d 1119, is applicable to the first loan transaction in this case. The Rules of Professional Conduct (RPC) which became effective September 1, 1985, 104 Wn.2d 1101, are applicable to the second loan transaction. *In re Witteman*, 108 Wn.2d 281, 283 n.2, 737 P.2d 1268, 68 A.L.R.4th 677 (1987).

Count 5 — alleging violation of RPC 1.7(b) relating to the conflict by acting as attorney for Mr. Hackler and preparing loan documents without a written waiver of conflict.

Count 6 — alleging violation of RPC 1.1 in failing to provide competent representation in preparing security for loans.

Count 7 — alleging Johnson's conduct violated RLD 1.1(p) demonstrating unfitness to practice law.

The hearing officer concluded that the bar association had *proved* the following charges.

Count 1 (failing to give adequate written disclosures when entering into the spring 1985 $10,000 loan transaction in violation of CPR DR 5-104(A)).[2]

Count 2 (failing to give adequate disclosures so as to amount to misrepresentation in entering the November 1985 $20,000 loan transaction in violation of RPC 1.8(a) and RPC 8.4(c)).[3]

---

[2]CPR DR 5-104(A) provides:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

[3]RPC 1.8(a) provides:

"A lawyer who is representing a client in a matter:

"(a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

"(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

"(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

"(3) The client consents thereto."

RPC 8.4(c) provides:

"It is professional misconduct for a lawyer to:

". . .

"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;"

Count 5 (failing to disclose a conflict of interest in preparing loan documents in violation of RPC 1.7(b)).[4]

*The hearing officer imposed* two reprimands and a censure for the misconduct and ordered Mr. Johnson to pay restitution to the Hacklers.

The hearing officer found that bar disciplinary counsel did not sustain the burden of proof on counts 3, 4, 6 and 7. Bar disciplinary counsel appealed a number of the hearing officer's findings and conclusions and the sanction imposed by the hearing officer to the 12-member Disciplinary Board (Board).

The Board declined to make any changes to the hearing officer's findings and conclusions. However, the Board did by a 7-to-5 vote impose a 6-month suspension and delete the order of restitution. Five members of the Board dissented and recommended a 60-day suspension.

Bar disciplinary counsel does not argue that we should alter the findings of fact, but argues that the findings and conclusions made by the hearing officer and affirmed by the Board warrant a disciplinary sanction of substantial suspension.

One basic issue is here presented.

## ISSUE

What is the proper sanction for an attorney who twice borrows money from clients without providing the clients with full written disclosure of the attorney's precarious financial situation?

## DECISION

CONCLUSION. Considering the nature of the misconduct, the lawyer's mental state, and the extent of the harm, together with the mitigating and aggravating factors, we

---

[4]RPC 1.7(b) provides in pertinent part:

"A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless:

"(1) The lawyer reasonably believes the representation will not be adversely affected; and

"(2) The client consents in writing after consultation and a full disclosure of the material facts . . ."

conclude that a 60-day suspension, together with a 2-year probationary period and an order of restitution, are the appropriate sanctions in this case.

Generally, in bar discipline cases, unchallenged findings of fact are not reviewed on appeal.[5] Although bar counsel challenged some of the findings of fact to the Board, those challenges were not renewed to this court. The Rules of Appellate Procedure guide review of disciplinary proceedings.[6] Under RAP 10.3(g), an assignment of error for each finding of fact a party contends was improperly made or refused must be included with reference to the finding or proposed finding. We will only review claimed error included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

Since bar disciplinary counsel does not continue to challenge the findings of fact in this court, the findings made by the hearing officer, and affirmed by the Board, will be accepted as verities.[7] We therefore consider the appropriate sanction based upon the findings of the hearing officer.

The *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986) govern bar discipline cases in this state.[8] We determine the sanction for attorney misconduct by engaging in a 2-stage process. First, we determine a presumptive sanction by considering (1) the ethical duty violated, (2) the lawyer's mental state and (3) the extent of the actual or potential harm caused by the misconduct. Then, we consider any aggravating or mitigating factors which may alter the presumptive sanction.[9]

---

[5]*In re Curran*, 115 Wn.2d 747, 759, 801 P.2d 962 (1990).

[6]RLD 7.4; *Curran*, 115 Wn.2d at 764.

[7]*See Curran*, 115 Wn.2d at 759.

[8]*In re Lynch*, 114 Wn.2d 598, 610, 789 P.2d 752 (1990); *In re McGough*, 115 Wn.2d 1, 9, 793 P.2d 430 (1990).

[9]*E.g.*, *McGough*, 115 Wn.2d at 9; *Curran*, 115 Wn.2d at 771; *In re Johnson*, 114 Wn.2d 737, 745, 790 P.2d 1227 (1990).

We then apply that formula to the facts of this case. Essentially, the ethical duties which Mr. Johnson violated were as follows: the duty to provide full written disclosure when entering a business transaction with a client (CPR DR 5-104(A); RPC 1.8; RPC 8.4(c)); and the duty to disclose his own potential conflict of interest to his client and obtain a written waiver of that conflict from the client (RPC 1.7(b)). There is no evidence in the record to suggest that Mr. Johnson ever intended to cheat the Hacklers or that he even attempted to discharge his debt to them in the bankruptcy proceeding. Although there was a clear violation of the attorney's ethical duty to provide full and written disclosure in a business transaction with a client, the funds were borrowed with some disclosure to the client of the attorney's financial situation, evidenced by notes with adequate interest rates and secured by deeds of trust. While we do not minimize the seriousness of the misconduct, it is clear that the case before us is not analogous to those wherein attorneys have converted clients' funds without the clients' knowledge and permission.[10]

The hearing officer correctly found Mr. Johnson's mental state to be that of knowledge. Mr. Johnson apparently got into financial trouble by mismanaging his practice and by incurring heavy tax liabilities which he could not or would not timely pay. Since he filed for bankruptcy in May 1986 and tax liens had been filed in 1984, he must have known that borrowing from his client in June and November of 1985 was risky at best. The *ABA Standards* define "knowledge" as the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. *ABA Standards for Imposing Lawyer Sanctions* 7 (Approved Draft, 1986).

The actual harm to the Hacklers is serious. They paid back their son's trust estate partially out of their own funds and total restitution from Mr. Johnson is still not certain.

---

[10]*See, e.g., In re McGough*, 115 Wn.2d 1, 793 P.2d 430 (1990).

■ Based upon the violation, the mental state and the injury, we first determine the presumed sanction. The ABA Standard most applicable to this misconduct is Standard 4.32:

> Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

*ABA Standards*, Std. 4.32, at 30.

We conclude that the presumptive sanction is suspension. The issue then is the duration of that suspension.

While the hearing officer imposed only two reprimands and a censure, the Board majority imposed a 6-month suspension and the 5-person dissent recommended a 60-day suspension in conformity with bar disciplinary counsel's initial recommendation.

■ While we accord greater weight to the conclusions of the Board than to the recommendation of the hearing officer with regard to the recommended sanction,[11] the ultimate responsibility for determining the nature of discipline nevertheless rests with this court.[12]

■ We will adopt the recommended sanctions of the Board unless we are persuaded by one or more of the following factors that the recommendation is inappropriate:

> (1) The purposes of attorney discipline (sanction must protect the public and deter other attorneys from similar misconduct);
> (2) The proportionality of the sanction to the misconduct (sanction must not depart significantly from sanctions imposed in similar cases);
> (3) The effect of the sanction on the attorney (sanction must not be clearly excessive);
> (4) The record developed by the hearing panel (sanction must be fairly supported by the record and must not be based upon considerations not supported by the record); and
> (5) The extent of agreement among the members of the board (sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons.)

---

[11] *Lynch*, 114 Wn.2d at 607.

[12] *Johnson*, 114 Wn.2d at 752.

*In re Hankin,* 116 Wn.2d 293, 296, 804 P.2d 30 (1991) (citing *In re Johnson,* 114 Wn.2d 737, 752, 790 P.2d 1227 (1990); *In re Noble,* 100 Wn.2d 88, 95-96, 667 P.2d 608 (1983)).

We therefore apply these factors to the facts of the present case. With regard to the purpose of attorney discipline, we conclude that a lengthy suspension is unnecessary to protect the public or deter similar conduct in light of the facts that Mr. Johnson has not shown a pattern of misconduct, has never been disciplined before, voluntarily reaffirmed his debt to the Hacklers after going into bankruptcy and according to the record before us has a good reputation for competence and integrity.

With regard to the "proportionality" inquiry, we have emphasized our commitment to consistency in attorney discipline cases.[13] The most analogous case in Washington is *In re McGlothlen,* 99 Wn.2d 515, 663 P.2d 1330 (1983) wherein the attorney violated CPR DR 5-104 by failing to make full disclosure to a client prior to entering into a business transaction with the client. In that case, Mr. McGlothlen purchased an estate asset from an heir who was his client but without disclosing the existence of an appraisal; he then resold the asset within a year for a significant profit.

Although the Board recommended that Mr. McGlothlen receive a censure, the majority of this court declined to impose any discipline. The court explained that because it was announcing a new standard, it would not impose discipline but served notice that it would not be so lenient in the future. In *McGlothlen,* the court explained that an attorney-client transaction is prima facie fraudulent and that

> an attorney attempting to justify a transaction with his or her client has the burden of showing (1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger.

*McGlothlen,* 99 Wn.2d at 525.

---

[13]*Curran,* 115 Wn.2d at 771.

In the present case, the level of disclosure mandated by *McGlothlen* did not occur. However, there was some disclosure of Mr. Johnson's precarious financial situation and Mr. Hackler acknowledged that he knew Johnson desperately needed money and that the loan was a risky one. In light of these facts, a lengthy suspension may not be proportionate to prior cases involving inadequate disclosure in business transactions with clients.

■ With regard to whether the effect of the sanction on the attorney is excessive, we note that a 6-month suspension would no doubt have a drastic effect not only on Mr. Johnson's practice but also on his ability to continue repaying the Hacklers. Although we do not consider this determinative, it is an appropriate factor for consideration.

With regard to the record, we conclude that all of the hearing officer's conclusions are supported by the record.

It is significant that in this case the Board was not in agreement as to the length of the suspension warranted. Five members would have imposed the sanction sought by bar counsel of 60 days' suspension instead of the majority's recommendation of 6 months.

After considering the duty violated, the lawyer's mental state and the client's injury, we conclude that suspension of between 60 days and 6 months is the proper sanction. Absent consideration of mitigating and aggravating circumstances, the 6-month suspension would be appropriate.

A presumed sanction, however, is to be considered in light of the aggravating and mitigating circumstances in the particular case in order to determine the actual sanction to be applied.

The *ABA Standards* include the following *aggravating factors* to be considered in assigning disciplinary sanctions, in Standard 9.22:

    (a)  prior disciplinary offenses;
    (b)  dishonest or selfish motive;
    (c)  a pattern of misconduct;
    (d)  multiple offenses;
    (e)  bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f)  submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g)  refusal to acknowledge wrongful nature of conduct;
(h)  vulnerability of victim;
(i)  substantial experience in the practice of law;
(j)  indifference to making restitution.

*ABA Standards*, Std. 9.22, at 15.

The hearing officer found the following aggravating circumstances to exist here: selfish motive, multiple offenses (two loans) and vulnerability of victim (due to Mr. Hackler's trust in Mr. Johnson). We note that the vulnerability finding is somewhat at odds with the hearing officer's conclusion that Mr. Hackler was a reasonably prudent investor. Also, presumably clients will usually be in a trust relationship with their attorneys so we do not attribute great weight to this aggravating factor.

The *ABA Standards* also include the following *mitigating factors* to be considered in assessing disciplinary sanctions, in Standard 9.32:

(a)  absence of a prior disciplinary record;
(b)  absence of a dishonest or selfish motive;
(c)  personal or emotional problems;
(d)  timely good faith effort to make restitution or to rectify consequences of misconduct;
(e)  full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f)  inexperience in the practice of law;
(g)  character or reputation;
(h)  physical or mental disability or impairment;
(i)  delay in disciplinary proceedings;
(j)  interim rehabilitation;
(k)  imposition of other penalties or sanctions;
(l)  remorse;
(m)  remoteness of prior offenses.

*ABA Standards*, Std. 9.32, at 15.

The hearing officer found that Mr. Johnson has no prior disciplinary record, is of good character and reputation and cooperated in the disciplinary investigation.

Mr. Johnson's former employer testified that Mr. Johnson has an exceptionally fine reputation for both competence

and integrity. Bar disciplinary counsel also admitted that Mr. Johnson had a good reputation and had no prior disciplinary record. We consider these two factors to be important in determining the appropriate sanction in this case where the Board was as divided on that decision as it was. We conclude that in light of the absence of any prior disciplinary action against Mr. Johnson, and in light of his good reputation, that a 60-day suspension is adequate to fulfill the purposes of this disciplinary action. We are also reluctant to suspend Mr. Johnson for such a long period that restitution to the Hacklers, which has recently been fairly consistently paid, will become unlikely.

We therefore suspend Mr. Johnson for 60 days in conformity with the 5-member Board's dissent and bar disciplinary counsel's original recommendation.

One further issue remains with regard to whether restitution should be ordered as a part of this proceeding. Generally, restitution can properly be included in a disciplinary order.[14] However, the presence of the bankruptcy proceeding makes the propriety of an order of restitution problematic. The hearing officer recommended as a condition of probation that Mr. Johnson submit a good faith plan for payment of his obligations to the Hacklers. However, the Board made no provision for restitution because of its concern regarding the enforceability of such an order due to Mr. Johnson's pending bankruptcy proceeding.

We agree with the Board that any order of restitution would be unenforceable if it was in any way in conflict with the bankruptcy orders.[15] However, in this case Mr. Johnson in his bankruptcy proceedings voluntarily reaffirmed his

---

[14]*In re Hankin*, 116 Wn.2d 293, 298, 804 P.2d 30 (1991); RLD 5.3.

[15]*See, e.g., In re Wade*, 115 Bankr. 222 (Bankr. 9th Cir. 1990), *aff'd*, 948 F.2d 1122 (9th Cir. 1991); *In re Sam Daily Realty, Inc.*, 57 Bankr. 83 (Bankr. D. Hawaii 1985); *In re Batali*, 98 Wn.2d 610, 657 P.2d 775, 39 A.L.R.4th 577 (1983); 11 U.S.C. § 525.

contractual obligations to the Hacklers and agreed in his Chapter 11 bankruptcy plan to repay his debt to them. He made similar representations to this court. We therefore perceive no conflict between an order of restitution which remains in conformity with the bankruptcy plan and the existence of the bankruptcy proceeding.[16]

In *In re Batali*, 98 Wn.2d 610, 619, 657 P.2d 775, 39 A.L.R.4th 577 (1983), we declared that in order to preserve public confidence in the legal profession, it is necessary for those who abuse the trust reposed in them as attorneys to be held accountable for their actions. This includes professional discipline as well as the paying of restitution whenever possible.

We are aware that restitution to the Hacklers will primarily have to be repaid from the profits of Mr. Johnson's law practice. Therefore, because we are ordering a 60-day suspension, we delay the effective date of the order of restitution until 90 days after the end of the period of suspension herein ordered.

So as to monitor Mr. Johnson's progress in following his plan for making full repayment to the Hacklers, we also impose a 2-year probationary period.[17] We direct bar disciplinary counsel to continue to oversee Mr. Johnson's repayment plan and to work with Mr. Johnson to insure timely repayment of the funds that he borrowed from the Hacklers.

It is therefore ordered: (1) attorney Ivan D. Johnson is suspended from the practice of law for a period of 60 days; (2) Mr. Johnson is placed on probation for a period of 2 years pursuant to RLD 5.2; (3) the Board shall appoint an attorney to supervise this probation pursuant to RLD 5.2(a); and (4) Mr. Johnson shall make restitution to Archie and Erica Hackler in conformity with such reasonable periodic plan as is entered into with bar disciplinary counsel pur-

---

[16]*Batali*, 98 Wn.2d at 619.

[17]RLD 5.2.

suant to RLD 5.3(b), said plan not to exceed or conflict with Mr. Johnson's existing bankruptcy plan.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and GUY, JJ., concur.