[No. 200,262-5.    En Banc.]
Argued March 23, 2006.    Decided July 27, 2006.

*In the Matter of the Disciplinary Proceeding Against*
JEFFREY T. HALEY, *an Attorney at Law.*

*Jeffrey T. Haley*, pro se.
*Leslie C. Allen*, for the Bar Association.

¶1 J.M. JOHNSON, J. — Jeffrey T. Haley appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) findings that he committed four acts of misconduct and its recommendation that he be suspended for one year. Mr. Haley does not dispute the facts (he provided no evidence at the hearing) and instead argues that the facts do not establish violations of the Rules of Professional Conduct (RPC). We affirm the Board and hearing officer's recommendation that Mr. Haley be suspended for one year.

FACTS AND PROCEDURE

¶2 Mr. Haley was admitted to the practice of law in Washington on October 30, 1979.

A. *Charges*

¶3 On March 23, 2004, the disciplinary counsel of the WSBA filed a formal complaint against Mr. Haley. The complaint set forth six counts against Mr. Haley.

¶4 Count I charged Mr. Haley with violating RPC 1.8(a) by entering into a business transaction with his client when the terms were unfair or unreasonable and the client did not have a reasonable opportunity to consult independent counsel. Evidence of this alleged improper transaction is a September 16, 1993, letter.

¶5 Count II charged Mr. Haley with violating RPC 1.8(a) by entering into a business transaction with his client as evidenced by a September 24, 1993, agreement.

¶6 Count III charged Mr. Haley with violating RPC 1.8(e) by financing the litigation and the settlement payment for the same litigation.

¶7 Count IV charged Mr. Haley with violating RPC 1.8(h) by negotiating and entering into an agreement that limited his law firm's liability for malpractice when the client was not represented by independent counsel or advised that independent representation was appropriate.

¶8 Counts V and VI charged Mr. Haley with violating RPC 8.4(c) and 8.4(*l*) in his dealings with the WSBA.

B. *Hearing*

1. *Facts*

¶9 In March 1992, Ralph Guditz, on behalf of Octal, Inc., retained Mr. Haley and his law firm Graybeal, Jackson, Haley & Johnson (Graybeal Jackson) to file a trade secret lawsuit against Scott Taylor, a former Octal employee. Mr. Taylor counterclaimed for damages. Mr. Guditz then retained Mr. Haley to represent him personally to defend the counterclaim.

¶10 On August 5, 1993, Mr. Haley filed a notice of intent to withdraw from representation of both Mr. Guditz and Octal. Mr. Haley stated that this was because there was a falling out between him and Mr. Guditz.

¶11 In August or September of 1993, Mr. Haley asked Brady Johnson[1] if he would take over the Taylor case for him. Mr. Haley informed Mr. Johnson that he would withdraw as counsel because he and Mr. Guditz had developed a conflict. Mr. Haley also told Mr. Johnson that Mr. Guditz "was good for [paying his legal fees]." Clerk's Papers (CP) at 151b. In fact, Octal was past due on payments for legal fees and costs. Mr. Johnson agreed to substitute as Octal's counsel and on September 20, 1993, he signed and thereafter filed a substitution of counsel.

¶12 Around September 1993, Mr. Haley asked Octal to sign a security agreement to secure past, present, and future legal fees owed to Graybeal Jackson. Mr. Guditz asked David Kelly—who represented Mr. Guditz on another matter—to review the proposed agreement. Mr. Kelly reviewed and revised the security agreement and returned it to Mr. Guditz. Mr. Haley made several additions and on September 16, 1993, Mr. Guditz signed the security agreement.

¶13 Also on September 16, 1993, Mr. Haley asked Mr. Guditz to sign a separate letter agreement (September 16, 1993, letter agreement), which provided in pertinent part:

> Brady Johnson will be substituted as counsel of record in the case . . . . *Brady Johnson will send to me bills for his time* . . . . *We will pay Brady Johnson,* at a discounted rate, to reflect our risk and advancing of cash, *and you will pay us* . . . . Interest will accrue at 12% per annum and you may prepay at any time.

CP at 213 (emphasis added).[2]

---

[1] An outside attorney not associated with Mr. Haley's law firm.

[2] Mr. Johnson thought that Octal was paying his legal fees and was unaware that Graybeal Jackson had loaned Octal money to pay those fees (as set forth in the September 16, 1993, letter agreement).

¶14 The September 16, 1993, letter agreement did not contain the suggestion that Mr. Guditz should seek independent counsel. Mr. Guditz states that Mr. Haley never advised him of the consequences of signing the September 16, 1993, letter agreement, did not advise him of any conflict of interest, and did not give him time or opportunity to consult independent counsel. Mr. Guditz did not consult another attorney regarding the September 16, 1993, letter agreement.

¶15 Mr. Haley and Mr. Guditz discussed how Octal could finance a settlement agreement for the Taylor litigation. Mr. Haley said that Graybeal Jackson would finance the settlement in return for a waiver of any malpractice claims against Mr. Haley and Graybeal Jackson.

¶16 On September 24, 1993, Mr. Haley presented Mr. Guditz with a proposed agreement for Graybeal Jackson to lend money to settle the Taylor litigation (September 24, 1993, agreement). The September 24, 1993, agreement provided that Graybeal Jackson would finance the Taylor settlement. It also provided that "Octal and Guditz release any claim they may have against Haley and [Graybeal Jackson] for improper or inadequate services on Octal v. Taylor." CP at 215.

¶17 Mr. Guditz did not consult another attorney regarding the September 24, 1993, agreement. Mr. Haley did not disclose any potential conflict of interest regarding the September 24, 1993, agreement nor did he advise Mr. Guditz that independent representation was appropriate. Mr. Guditz states that he did not seek Mr. Johnson's or Mr. Kelly's advice regarding the letter because he considered Mr. Haley to be Octal's attorney.

¶18 Mr. Johnson and Mr. Kelly state that Mr. Guditz did not consult them about any agreement involving waiver of malpractice.

¶19 Mr. Johnson also was unaware that Graybeal Jackson financed the Taylor settlement. Similarly, Mr. Kelly was not consulted regarding Graybeal Jackson's loan to finance the Taylor settlement.

¶20 Mr. Guditz made payments pursuant to the September 24, 1993, agreement from October 1993 to May 1998, at which time Mr. Guditz stopped making payments because "[Mr.] Haley interfered with FUGU, Inc.'s business relationship with one of its primary customers." CP at 210. In August 2001, Mr. Guditz received a collection letter regarding the September 24, 1993, agreement. In August 2001, Mr. Guditz filed the instant grievance against Mr. Haley.

### 2. *Procedure*

¶21 Prior to the hearing, Mr. Haley filed a motion in which he stated that he would agree to a six month suspension and costs of $500 to avoid a hearing.[3] However, Mr. Haley refused to stipulate to the truth of the factual allegations and legal conclusions. He moved the hearing officer to enter a decision based on the WSBA's demand. The hearing officer denied Mr. Haley's motion because the matter remained contested.

¶22 By joint motions of the parties, the hearing officer ordered that testimonial evidence be provided through declaration and/or affidavit. Brady Johnson, David Kelly, and Ralph Guditz all submitted declarations. Mr. Haley did not submit any declarations or affidavits supporting his case. Further, in his brief[4] to the hearing officer, Mr. Haley did not assert any alternative version of the facts and assumed a "selected sub-set of the facts asserted by the [WSBA]," stating "[t]his is not my testimony below and it is not necessarily the facts that I assert are true based on evidence." CP at 273.

---

[3] He stated, "I do not want to prepare for a hearing in this matter or attend a hearing in this matter." CP at 11.

[4] Mr. Haley asserted that his brief was analogous to a motion for summary judgment or a motion to dismiss at the close of plaintiff's case.

¶23 The hearing was held on October 14, 2004. Mr. Haley appeared and made the following statement about submitting evidence:

> I'm not asserting that I didn't have time to prepare declarations. I have not prepared declarations; I don't intend to prepare declarations. I didn't choose to present any evidence other than what is in the record that the Bar Association created.

Tr. (Oct. 14, 2004) at 18.

¶24 The hearing officer admitted into evidence the declarations of Mr. Johnson, Mr. Guditz, and Mr. Kelly. On November 24, 2004, the hearing officer filed findings of fact, conclusions of law, and recommendation in which he found that Mr. Haley violated the RPCs as charged in counts I-IV but not in counts V and VI. The hearing officer recommended that Mr. Haley be suspended for one year.

¶25 Mr. Haley filed a notice of appeal to the Board on December 8, 2004.

C. *Disciplinary Board*

¶26 On April 5, 2005, the Board unanimously adopted the hearing officer's findings of fact, conclusions of law, and recommendation. Mr. Haley filed a notice of appeal to this court on April 25, 2005.

ISSUES

1. Did Mr. Haley violate RPC 1.8(a) when he entered into the September 16, 1993, letter agreement with Mr. Guditz?

2. Did Mr. Haley violate RPC 1.8(a) when he entered into the September 24, 1993, agreement with Mr. Guditz?

3. Did Mr. Haley violate RPC 1.8(e) when he agreed to finance the settlement in the Taylor lawsuit?

4. Did Mr. Haley violate RPC 1.8(h) when he entered into an agreement with Mr. Guditz to limit his and his law firm's liability for any malpractice?

5. Is the sanction imposed—one year suspension—appropriate?

ANALYSIS

¶27 This court is the ultimate authority for attorney discipline in Washington. *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 276, 66 P.3d 1069 (2003). We will not disturb a hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. *Id.* We will also uphold the hearing officer's conclusions of law if they are supported by the findings of fact. *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d 393, 405, 98 P.3d 477 (2004).

¶28 In the instant case, Mr. Haley is not challenging any of the findings of fact, nor did he present evidence contrary to any of the findings of fact at the hearing.

¶29 The hearing officer and the Board found that Mr. Haley violated several sections of RPC 1.8, "Conflict of Interest; Prohibited Transactions; Current Client," when he engaged in various business transactions with his client.

¶30 "[A]n attorney-client transaction is prima facie fraudulent." *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 704, 826 P.2d 186 (1992). In an attorney-client transaction, the attorney bears the burden of proving that his actions were not unethical. *Id.*

> To justify a transaction with a client, the attorney has the burden of showing: "(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger."

*In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 164, 896 P.2d 1281 (1995) (quoting *In re Disciplinary*

*Proceeding Against McGlothlen,* 99 Wn.2d 515, 525, 663 P.2d 1330 (1983)).

1.  *Count I—Did Mr. Haley violate RPC 1.8(a) when he entered into the September 16, 1993, letter agreement with Mr. Guditz?*

¶31  RPC 1.8(a) provides:

A lawyer who is representing a client in a matter:

(a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents thereto.

¶32  The September 16, 1993, letter agreement provided that Mr. Haley would withdraw from representation of Octal and Mr. Guditz and that Mr. Johnson would take over representation. However, Mr. Johnson would send Octal's and Mr. Guditz's billing to Graybeal Jackson, who would then pay the fees.

■ ¶33  Mr. Haley argues that the September 16, 1993, letter agreement did not violate RPC 1.8(a) because all the terms of the agreement were disclosed and in writing. However, Mr. Haley did not disclose that he and his firm had a potential conflict of interest regarding the September 16, 1993, letter agreement.

¶34  Mr. Haley also argues that Mr. Guditz sought the advice of independent counsel. However, Mr. Haley confuses the security agreement signed on September 16, 1993 (in which Mr. Guditz did seek the advice of independent counsel) and the September 16, 1993, letter agreement. The security agreement is not at issue here.

¶35 Mr. Guditz did not seek the advice of independent counsel regarding the September 16, 1993, letter agreement. The letter itself did not contain any suggestion that Mr. Guditz seek independent counsel. Mr. Haley presented the letter to Mr. Guditz on the same day that it was signed, September 16, 1993. Mr. Guditz states that Mr. Haley "did not give me any time, let alone a reasonable opportunity, to seek the advice of independent counsel regarding the terms of the letter agreement." CP at 208.

¶36 The findings of fact support the conclusion of law that Mr. Haley violated RPC 1.8(a) when he entered into the September 16, 1993, letter agreement with Mr. Guditz without disclosing the possible conflict of interest and without providing Mr. Guditz the opportunity to consult with independent counsel.

2. *Count II—Did Mr. Haley violate RPC 1.8(a) when he entered into the September 24, 1993, agreement with Mr. Guditz?*

¶37 The September 24, 1993, agreement provided that Graybeal Jackson would finance the Taylor settlement for Octal/Mr. Guditz and Octal/Mr. Guditz would release any malpractice suit against Mr. Haley and Graybeal Jackson.

¶38 Mr. Haley argues that on September 24, 1993, he was no longer in an attorney-client relationship with Mr. Guditz and thus was not bound by the RPCs.

¶39 Whether an attorney client relationship exists depends largely on the client's subjective belief that it exists. *Egger*, 152 Wn.2d at 410-11. "[T]he subjective belief must be 'reasonably formed based on the attending circumstances, including the attorney's words or actions.'" *Id.* (quoting *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992)).

¶40 Here, Mr. Guditz states that on September 24, 1993, he still considered Mr. Haley to be his attorney. This belief was reasonable considering Mr. Haley's actions and the very terms of the September 24, 1993, agreement—"if

[Graybeal Jackson] does not achieve the [Taylor] settlement" and "including payment by Octal to [Graybeal Jackson] for achieving a settlement." CP at 215. Thus, an attorney-client relationship existed between Mr. Haley and Mr. Guditz on September 24, 1993.

¶41 The terms of the September 24, 1993, agreement were unreasonable. Octal had viable claims against Taylor, but the lawsuit was dismissed with prejudice because of Mr. Haley's failure to comply with discovery. Thus, it was unreasonable for Octal to agree to limit Mr. Haley and Graybeal Jackson's malpractice liability.

¶42 Moreover, Mr. Haley did not give Mr. Guditz the opportunity to consult with independent counsel regarding the agreement. Mr. Haley never advised Mr. Guditz to consult independent counsel, and Mr. Guditz did not do so.

¶43 The findings of fact support the conclusion of law that Mr. Haley violated RPC 1.8(a) when he entered into the September 24, 1993, agreement with Mr. Guditz.

3.   *Count III—Did Mr. Haley violate RPC 1.8(e) when he agreed to finance the settlement in the Taylor lawsuit?*

¶44  RPC 1.8(e) provides:

A lawyer who is representing a client in a matter:

(e) Shall not, while representing a client in connection with contemplated or pending litigation, advance or guarantee financial assistance to his or her client, except that:

(1) A lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses; and

(2) In matters maintained as class actions only, repayment of expenses of litigation may be contingent on the outcome of the matter.

¶45  In the September 24, 1993, agreement, Graybeal Jackson agreed to finance the settlement in the Taylor law-

suit.[5] At this time, Mr. Haley had withdrawn from representation and Mr. Johnson was the attorney representing Mr. Guditz and Octal for the Taylor settlement. Thus, the exceptions provided in the rule do not apply here. Graybeal Jackson was not accruing any expenses of litigation at that point—it was no longer representing Mr. Guditz and Octal.

¶46 The findings of fact support the conclusion of law that Mr. Haley violated RPC 1.8(e) when he agreed to finance the Taylor settlement.

4. *Count IV—Did Mr. Haley violate RPC 1.8(h) when he entered into an agreement with Mr. Guditz to limit his and his law firm's liability for any malpractice?*

¶47 RPC 1.8(h) provides:

A lawyer who is representing a client in a matter:

(h) Shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

¶48 The September 24, 1993, agreement provided that "Octal and Guditz release any claim they may have against Haley and [Graybeal Jackson] for improper or inadequate services on Octal v. Taylor." CP at 215.

¶49 There is no writing that reflects that Mr. Haley advised Mr. Guditz that independent representation was appropriate. Mr. Haley did not inform Mr. Guditz that independent representation was appropriate. Mr. Guditz did not seek, and was not represented by, independent counsel when he entered into the agreement limiting liability.

¶50 Therefore, the findings of fact support the conclusion of law that Mr. Haley violated RPC 1.8(h) when he entered

---

[5] The letter specified payments but did not specify an interest rate.

into the September 24, 1993, agreement to release liability. Mr. Guditz was not represented by counsel or informed that such independent representation was appropriate.

*5. Is the sanction imposed by the Board appropriate?*

¶51 The *American Bar Association (ABA) Standards for Imposing Lawyer Sanctions* guide this court's determination of appropriate sanctions in bar disciplinary cases. *In re Disciplinary Proceeding Against Haley*, 156 Wn.2d 324, 339, 126 P.3d 1262 (2006). First, we determine the presumptive sanction based on the ethical duty violated, the attorney's mental state, and the extent of actual or potential harm caused by the conduct. *Id.* Second, we consider aggravating and mitigating factors, which may alter the presumptive sanction. *Id.* We "will generally adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other cases or the Board was not unanimous in its decision." *Id.*

¶52 Here, the Board unanimously adopted the hearing officer's recommended sanction—a one year suspension.

¶53 The *ABA Standards* provide that in cases involving an attorney's failure to avoid conflicts of interest,

> [s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

ABA Standards For Imposing Lawyer Sanctions std. 4.32 (1991). The length of suspensions generally should be between six months and three years. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 495, 998 P.2d 833 (2000). The length of the suspension is also affected by the existence of aggravating and mitigating factors.

¶54 Here, the hearing officer found the following aggravating factors, set forth in *ABA Standards* std. 9.22:

> "(a) prior disciplinary offenses *[Respondent received a stipulated censure in February 2000 for his unauthorized contact with a*

*person represented by counsel; in a different case, Respondent's appeal is pending regarding the Disciplinary Board's recommendation that Respondent be suspended for 6 months for knowingly engaging in conflicts of interest with his client and for six months for contacting a person represented by counsel without authority]*;

(b) dishonest or selfish motive;

(g) refusal to acknowledge wrongful nature of conduct;

(i) substantial experience in the practice of law *(lawyer since 1979)."*

CP at 302. The hearing officer found the following mitigating factor, set forth in *ABA Standards* std. 9.32: "(j) delay in disciplinary proceedings (*Agreements signed in 1993*)."

¶55 Mr. Haley argues that the aggravator "prior disciplinary offense" is not proper because "[i]n 1993 when these events occurred, I had not been disciplined for anything and, to my knowledge, no grievance had ever been filed against me." Br. of Resp't at 26.

■ ¶56 This court has "previously held that an after-the-fact offense operates as a prior offense for aggravating factor purposes as long as the lawyer knew he or she was under investigation for the older offense when committing the more recent offense." *Haley*, 156 Wn.2d at 341. Here, Mr. Haley committed the instant offense in 1993 and was charged with the violations in 2004. The more recent offenses occurred before 2004; thus, Mr. Haley is correct that this court should not consider the other disciplinary proceedings because he was not under investigation for the current offense when he committed the subsequent offense.

¶57 However, the remaining aggravating factors apply and are supported by the evidence: Mr. Haley's violations were at the expense of his client but to his benefit, Mr. Haley continues to deny the wrongful nature of his conduct, and Mr. Haley has substantial experience in the practice of law. Thus, the Board's unanimous decision to suspend Mr. Haley for one year is appropriate.

CONCLUSION

¶58 We affirm the Board's finding that Mr. Haley violated the above RPCs and the Board's recommendation that he be suspended for one year.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶59 SANDERS, J. (dissenting) — The majority concludes Jeffrey Haley violated RPC 1.8(a) by entering into a business transaction with Ralph Guditz without advising him of the need to seek independent legal counsel and RPC 1.8(e) by advancing financial assistance to Guditz. I disagree. The letter agreement between Haley and Guditz was a fee agreement, not a business transaction. And Haley was no longer representing Guditz when he entered an agreement to finance the settlement of the Taylor lawsuit. However, the majority correctly concludes Haley violated RPC 1.8(h) by entering an agreement limiting his malpractice liability to Guditz, an unrepresented former client.

*I. Haley Did Not Violate RPC 1.8(a) by Entering into the September 16, 1993 Letter Agreement with Guditz*

¶60 Haley did not violate RPC 1.8(a) because his September 16, 1993 letter agreement with Guditz was a fee agreement, not a business transaction. "A lawyer who is representing a client in a matter . . . [s]hall not enter into a *business transaction* with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client" unless the terms are "fair and reasonable" and "fully disclosed," the lawyer advises the client to seek "independent counsel," and the client gives informed "consent[ ]." RPC 1.8(a) (emphasis added). Notwithstanding the majority's selective quotation of *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 702, 826 P.2d 186 (1992), RPC 1.8(a) applies *only* to business transactions. Specifically, "[i]t does not apply to ordinary fee arrangements between client and lawyer." AMERICAN BAR ASSOCIATION, ANNOTATED

414

MODEL RULES OF PROFESSIONAL CONDUCT (ABA MRPC), R. 1.8 cmt. [1] (5th ed. 2003). *See also* WASHINGTON STATE BAR ASSOCIATION INFORMAL ETHICS OPINION 1321 (Sept. 22, 1989), http://pro.wsba.org/io/search.asp. ("The Committee was of the unanimous opinion that RPC 1.8(a) does not apply to attorney/client fee agreements."). Indeed, an attorney-client business transaction is " 'prima facie fraudulent' " in the limited sense "an attorney attempting to justify a transaction with his or her client has the burden of showing" its legitimacy. *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983) (quoting 7 C.J.S. *Attorney and Client* § 127 (1980)). But an attorney-client fee agreement need not meet this burden.

¶61 On September 16, 1993, Haley and Guditz entered into a security agreement and a letter agreement. The security agreement secured legal fees owed to Graybeal, Jackson, Haley & Johnson (Haley's law firm), and the letter agreement established a fee agreement under which Guditz reimbursed Haley for bills submitted by Brady Johnson, an attorney who substituted as counsel of record for Guditz. The majority concedes Guditz obtained outside legal counsel to review the security agreement. Majority at 402. Accordingly, Haley did not violate RPC 1.8(a) by entering into the security agreement.

¶62 A fee agreement must comply with both RPC 1.5 and RPC 1.8(a) when part of the fee consists of a business transaction or interest in the client's business. *See Cotton v. Kronenberg*, 111 Wn. App. 258, 271 & n.30, 44 P.3d 878 (2002); *Holmes v. Loveless*, 122 Wn. App. 470, 475-77, 94 P.3d 338 (2004) (holding "the excessive fee and business transaction provisions overlap when attorneys and clients use business transactions as compensation for legal services"). *See also* ABA MRPC R. 1.8 cmt. [1] (noting requirements of RPC 1.8(a) "must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee"). A business transaction is a business transaction, whether or not it is also part of a fee agreement.

¶63 However, while RPC 1.8(a) applies to fee agreements in which a business transaction constitutes part of the fee, it applies only to the business transaction element of the fee agreement. Therefore, the letter agreement was a "business transaction" subject to RPC 1.8(a) only to the extent "compensation was directly linked" to the security agreement. *Holmes*, 122 Wn. App. at 475. But the security agreement in which Haley accepted a security interest in Guditz's business did not violate RPC 1.8(a). So the letter agreement did not violate RPC 1.8(a) either. Insofar as the letter agreement is distinct from the security agreement, it is a fee agreement subject only to RPC 1.5, not a business transaction subject to RPC 1.8(a).

## II.  Haley Did Not Violate RPC 1.8(e) by Entering into the September 24, 1993 Letter Agreement with Guditz

¶64 Haley did not violate RPC 1.8(e) because he was not "representing" Guditz when he entered into the September 24, 1993 letter agreement. "A lawyer who is representing a client in a matter . . . [s]hall not, *while representing a client* in connection with contemplated or pending litigation, advance or guarantee financial assistance to his or her client." RPC 1.8(e) (emphasis added). The majority concedes Haley and Graybeal Jackson were "no longer representing Mr. Guditz and Octal" when Haley entered the letter agreement. Majority at 410. Accordingly, its conclusion Haley violated RPC 1.8(e) is inexplicable and plainly incorrect.

## III.  Haley Violated RPC 1.8(h) by Entering into the September 24, 1993 Letter Agreement Limiting His Malpractice Liability to Guditz

¶65 Haley did violate RPC 1.8(h) by entering an agreement limiting his malpractice liability to an unrepresented former client. I would recalculate the sanction accordingly and therefore dissent.