[No. 200,448-2.   En Banc.]
Argued September 11, 2007.   Decided December 20, 2007.

*In the Matter of the Disciplinary Proceeding Against* JAMES
BYRON HOLCOMB, *an Attorney at Law.*

*Brett A. Purtzer*, for petitioner.
*M. Craig Bray*, for the Bar Association.

¶1 FAIRHURST, J. — James Byron Holcomb appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) recommendation that he be suspended from the practice of law for six months. The WSBA charged Holcomb with two counts of misconduct arising out of his representation of John C. Schiffner. The hearing officer and Board concluded that Holcomb violated former RPC 1.8(a) (1993 & 2000) and former RPC 1.7(b) (1995) because Holcomb sought and obtained 24 interest free loans from Schiffner, Holcomb did not advise Schiffner that he could seek independent counsel about the advisability of entering into the transactions, and Holcomb did not inform Schiffner of Holcomb's precarious financial condition.

¶2 Holcomb does not challenge the hearing officer's and Board's findings of fact. Holcomb argues that, because the source of funds for the loans was a checking account held in the name of Schiffner, Schiffner's wife, and the Schiffners' revocable trust, he did not engage in a transaction with his client, who was Schiffner individually. Holcomb further argues that the Board erred in imposing a six month suspension because his actions were merely negligent rather than knowing. The WSBA argues the court should affirm the hearing officer's and Board's conclusions of law and argues the recommended six month suspension is appropriate.

¶3 We hold that the hearing officer and Board properly determined that Holcomb violated former RPC 1.8(a) and former RPC 1.7(b) and impose the Board's recommended sanction of a six month suspension.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual background

¶4 Holcomb was admitted to the practice of law in Washington on September 22, 1967. In 1998, Holcomb agreed to represent Schiffner for an hourly fee to review files and make recommendations regarding an equal employment opportunity action Schiffner had filed pro se against the secretary of the navy. Holcomb and Schiffner later signed a second fee agreement in which Holcomb agreed to represent Schiffner for an hourly fee at an Equal Employment Opportunity Commission (EEOC) hearing.

¶5 When the EEOC denied Schiffner's claim and Schiffner decided to appeal to the United States District Court for the Western District of Washington, Schiffner and Holcomb agreed to a contingent fee arrangement and signed a third fee agreement. In November 2002, the district court dismissed Schiffner's appeal. In early January 2003, Holcomb agreed to determine the likelihood of success at the United States Court of Appeals for the Ninth Circuit, and he and Schiffner entered into a fourth fee agreement in which Holcomb agreed to file a notice of appeal at the Ninth Circuit Court of Appeals and seek mediation of Schiffner's claim. Sometime in early March 2003, Schiffner and Holcomb reached an impasse regarding the representation in the appeal and Holcomb withdrew.

¶6 The disciplinary matter in this case arose out of a series of loans that Holcomb requested from Schiffner.[1] From December 1999 through March 2001, Holcomb borrowed a total of $52,300 in 24 individual loans. The amount of each individual loan ranged from $750 to $3,500. Most of the loans were outstanding for no more than two weeks.

---

[1] Holcomb requested the loans because he was experiencing two personal financial problems. The first was that his wife was undergoing a costly dialysis treatment. The second was that the "on-site septic system" at his home was "not in compliance" and the "health district" had "tied up his property," leaving him with cash flow problems. Tr. (Nov. 14, 2005) at 165-66.

Some of the loans were paid back via postdated checks given at the time the loan was issued. However, the last loan was outstanding for over a year. Nevertheless, Holcomb eventually repaid all of the loans.

¶7 The loans were not subject to a written loan agreement, payment of interest, penalties or fees, or a schedule for repayment of the principal. Holcomb did not provide security for the loans, although most of them were short term and for relatively small amounts. Holcomb did not advise Schiffner that his personal interests might conflict with Schiffner's, obtain a written waiver of a conflict of interest, provide Schiffner with information about his current financial condition, or advise Schiffner that he could seek independent counsel about the suitability of his loan request.

¶8 Eleven of the loans were made by cashier's check to J. Byron Holcomb and contained references to John C. Schiffner, John Schiffner, or Schiffner. Thirteen loans were made by personal check from an account in the name of the Schiffner trust agreement, John C. Schiffner, and Anita G. Schiffner (Schiffner's wife). Eight of the personal checks were signed by Schiffner. Three of the personal checks were signed by his wife. Neither Schiffner nor his wife signed as trustee of the Schiffner trust agreement. Holcomb repaid the loans by personal checks made payable to John Schiffner, with no reference to the trust or Schiffner's wife.

B. Procedural history

¶9 The WSBA filed a complaint with the Board under ELC 10.3, charging Holcomb with two counts of misconduct. Count one charged him with violating former RPC 1.8(a)[2] (conflict of interest, prohibited transactions, current

---

[2] Former RPC 1.8(a) stated, in pertinent part:

A lawyer who is representing a client in a matter:
   (a) *Shall not enter into a business transaction with a client* . . . unless:
   (1) The transaction and terms on which the lawyer acquires the interest are *fair and reasonable to the client* and are *fully disclosed and transmitted in*

client) and count two charged him with violating former RPC 1.7(b)[3] (conflict of interest, general rule).

¶10 Following testimony and closing arguments, the hearing officer entered 12 findings of fact. In addition to admitted allegations, the hearing officer found: (1) there was no meeting of the minds regarding the fee agreement for the appeal to the Ninth Circuit Court of Appeals and the representation ended; (2) while representing the Schiffners, Holcomb had received multiple short term loans totaling $52,500[4] from the Schiffners; (3) the loans were made by checks written on an account for the Schiffner trust, which is made up of John and Anita Schiffner, and for whom the money is held in trust; (4) when obtaining the loans from the Schiffners, Holcomb did not advise them that his personal interests might conflict with their interests; (5) Holcomb never advised the Schiffners that they could seek the advice of independent counsel regarding whether they should loan him the money he had requested; (6) Holcomb did not discuss with the Schiffners whether the loans would bear interest or whether they would contain any provisions for fees or penalties for late or incomplete payments or bank charges incurred by the Schiffners in connection with a payment; (7) the loans were not evidenced by promissory notes or other written instruments; (8) none of the loans provided for interest, late fees, penalties for checks not

---

*writing to the client* in a manner which can be reasonably understood by the client;

    (2) The client is *given a reasonable opportunity to seek the advice of independent counsel* in the transaction; and

    (3) The client consents thereto.

(Emphasis added.)

[3] Former RPC 1.7(b) stated, in pertinent part:

A lawyer shall not represent a client if the representation of that client *may be materially limited . . . by the lawyer's own interests,* unless:

    (1) The lawyer reasonably believes the representation will not be adversely affected; and

    (2) The client consents in writing after consultation and a full disclosure of the material facts . . . .

(Emphasis added.)

[4] The loans actually totaled $52,300.

backed by sufficient funds, or other such common loan requirements; (9) at the time of the loans Holcomb was having cash flow problems but owned significant real property assets; (10) none of the loans was secured; (11) some of Holcomb's payments were late and some of the checks he had written did not clear the bank; and (12) the Schiffners bore the consequences of Holcomb's late payments or insufficient funds, including additional bank charges.

¶11 The hearing officer entered five conclusions of law. He concluded Holcomb was culpable on count one, the violation of former RPC 1.8(a), because he entered into loan transactions with Schiffner "when the terms were not fair and reasonable to [Schiffner] and were not fully disclosed and transmitted in writing to [Schiffner]." Findings of Fact, Conclusions of Law and Hr'g Officer's Recommendation (FFCL) at 9, ¶ 14. He found unconvincing Holcomb's attempts to narrowly define his representation to Schiffner individually and commented that such a definition would provide a lawyer with a defense whenever he or she entered into a transaction with a married client. The hearing officer was also troubled by Holcomb's arguments that his constitutional right to contract had been violated because the hearing officer stated that the contract terms Holcomb had secured with Schiffner for the loans were facially unreasonable. The hearing officer concluded the WSBA proved by a clear preponderance of the evidence that Holcomb was culpable on count two, the violation of former RPC 1.7(b), because he continued to represent Schiffner while using him as the source for multiple short term loans. He also found Holcomb's claims about the "alter ego" of the trust unpersuasive based on testimony at the hearing. FFCL at 10, ¶ 18.

¶12 In determining the appropriate sanction for Holcomb's violations, the hearing officer applied the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 ed. & Supp. 1992) (ABA *Standards*). First, he determined that the presumptive sanction in the ABA

*Standards* was found in standard 4.32.[5] He stated that Holcomb "acted knowingly," "knew he was seeking to borrow money from a client," and by "entering into the loan transactions with the Schiffners[, he] knowingly failed to avoid the conflicts of interest with his client." FFCL at 11, ¶¶ 21-23. He held that Holcomb's conduct "caused actual and potential injury to the client and to the public." FFCL at 11, ¶ 24. The Schiffners "became uncomfortable in their dealings" with Holcomb. FFCL at 11, ¶ 25. He concluded there was "actual pecuniary harm" because the Schiffners did not earn interest and were not reimbursed for fees and charges. FFCL at 11-12, ¶ 26. Finally, he concluded that because Holcomb was compromised financially, his judgment also may have been compromised. The hearing officer concluded that the appropriate presumptive sanction was suspension.

¶13 Next, the hearing officer evaluated the parties' proposed aggravating and mitigating factors.[6]

---

[5] Standard 4.32 states, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."

[6] The ABA *Standards* standard 9.22 sets out a list of aggravating factors that *may* be considered. Aggravating factors include, but are not limited to,

    (a) prior disciplinary offenses;
    (b) dishonest or selfish motive;
    (c) a pattern of misconduct;
    (d) multiple offenses;
    (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g) refusal to acknowledge wrongful nature of conduct;
    (h) vulnerability of victim;
    (i) substantial experience in the practice of law;
    (j) indifference to making restitution;
    (k) illegal conduct, including that involving the use of controlled substances.

The ABA *Standards* standard 9.32 also sets out a list of mitigating factors that *may* be considered. Mitigating factors include, but are not limited to,

    (a) absence of a prior disciplinary record;
    (b) absence of a dishonest or selfish motive;
    (c) personal or emotional problems;

¶14 The hearing officer adopted all of the WSBA's proposed aggravating factors, which were: (b) dishonest or selfish motive, (d) multiple offenses, (g) refusal to acknowledge wrongful nature of conduct, (i) substantial experience in the practice of law, and (j) indifference to making restitution. ABA STANDARDS std. 9.22. Additionally, he commented that factor (f) false evidence, and factor (h) vulnerability of victim, should be considered because of Holcomb's lack of candor to the tribunal and his failure to provide updated financial information to Schiffner. ABA STANDARDS std. 9.22.

¶15 The hearing officer adopted both of the WSBA's proposed mitigating factors: (a) absence of a prior disciplinary record and (c) personal and emotional problems. ABA STANDARDS std. 9.32. He noted, however, that he would discount factor (c) because substantial time had passed since Holcomb's personal problems had occurred and Holcomb still had not recognized the "inappropriate nature of his acts." FFCL at 13, ¶ 34. The hearing officer denied all of Holcomb's proposed mitigating factors: (b) absence of a dishonest or selfish motive, (d) timely good faith effort to satisfy consequences of any perceived misconduct, (e) full and free disclosure to the Board and cooperative attitude toward proceedings, and (g) character or reputation. ABA STANDARDS std. 9.32.

¶16 In calculating the appropriate length of the suspension, the hearing officer noted that six months is generally the accepted minimum, citing *In re Disciplinary Proceeding*

---

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse . . . ;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

*Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003) (*Cohen* I). FFCL at 12, ¶ 30. However, he concluded that because the aggravating factors significantly outweighed the mitigating factors, he was recommending a one year suspension. He based his conclusion on a comparison to a stipulated case where an attorney had borrowed less than $5,000 from attorneys in his firm rather than a member of the public, and received a two year suspension.

¶17 By a vote of 11 to 1, the Board modified the hearing officer's recommended one year suspension and reduced Holcomb's sanction to a six month suspension. The Board reduced the sanction because (1) it struck three aggravating factors,[7] (2) it disagreed with the hearing officer's use of the total amount of the loans as a measure of the seriousness of the misconduct, and (3) it found no specific showing of loss to a client.

¶18 In accordance with ELC 12.3(a), Holcomb timely sought review of the Board's order.

## II. ISSUES

A. Did the hearing officer and Board correctly conclude that Holcomb violated former RPC 1.8(a)?

B. Did the hearing officer and Board correctly conclude that Holcomb violated former RPC 1.7(b)?

C. Did the Board correctly conclude that the proper sanction for Holcomb's violations is a six month suspension?

## III. ANALYSIS

¶19 This court bears the ultimate responsibility for lawyer discipline in Washington. *In re Disciplinary Pro-*

---

[7] The Board struck aggravating factors (j) indifference to making restitution, (f) false evidence, and (h) vulnerability of victim. ABA STANDARDS std. 9.22. As a result, it concluded the aggravating factors did not significantly outweigh the mitigators.

*ceeding Against Anschell*, 141 Wn.2d 593, 607, 9 P.3d 193 (2000) (*Anschell* I). " 'Unchallenged findings of fact made by the hearing officer and affirmed by the Disciplinary Board will be accepted as verities on appeal.' " *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 461, 120 P.3d 550 (2005) (quoting *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 594, 48 P.3d 311 (2002)). "[W]e review conclusions of law de novo and require that they be supported by the findings of fact." *Id*.

¶20 Holcomb does not challenge the hearing officer's findings of fact.[8] Therefore, we accept as verities the findings of fact and review the hearing officer's and Board's conclusions of law to determine if they are supported by the findings of fact.

A. The hearing officer and Board correctly concluded that Holcomb violated former RPC 1.8(a)

¶21 Holcomb argues that he did not violate former RPC 1.8(a) because when he obtained loans in the form of checks drawn on an account in the name of the Schiffner trust, John C. Schiffner, and Anita G. Schiffner, he was not engaged in a transaction with a "client." Br. of Appellant at 13-14. He argues that the fee agreements he signed with Schiffner limited his relationship to Schiffner individually, whereas he received the loans from the trust or marital community. The WSBA, citing *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992), argues that the question of whether there is an attorney-client relationship is factual and Holcomb ignores the facts when he argues that the Schiffner trust and marital community were separate from Schiffner individually. Answering Br. of WSBA at 13.

¶22 We must answer two questions to determine whether Holcomb violated former RPC 1.8(a). First, we must determine whether the relationship between Holcomb

---

[8] Pursuant to ELC 12.1, RAP 10.3(a)(4) applies to appeals of Board decisions and requires the petitioner to provide "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."

and Schiffner extended to the Schiffner trust and/or marital community, such that he was engaged in a transaction with a client. If so, we must determine whether the loan transactions violated former RPC 1.8(a).

1. *Holcomb was engaged in a transaction with a client*

■ ■ ¶23 "The essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters." *Bohn*, 119 Wn.2d at 363. There is substantial evidence in the record to support the fact that Schiffner sought and received advice and assistance on legal matters related to his EEOC complaint. He signed separate fee agreements with Holcomb for services related to his EEOC complaint from 1998 to 2003. Holcomb represented Schiffner in the district court and the Ninth Circuit Court of Appeals. Schiffner acknowledged in the disciplinary hearing that Holcomb was his lawyer. There is little question that Schiffner was Holcomb's client. Holcomb challenges the hearing officer's conclusion that Holcomb's relationship with Schiffner extended to the Schiffner trust and/or marital community.

■ ¶24 Testimony given at the hearing supports the conclusion that the Schiffner trust is an extension of Schiffner individually. The attorney who wrote the Schiffner trust, Richard C. Tizzano, testified that the trust is revocable and property may be added or removed at will. He testified that the Schiffners are the trustors, trustees, and beneficiaries of the trust. He also confirmed that the trust has the same tax identification number as the Schiffners' Social Security numbers and does not insulate the Schiffners from creditors or the Internal Revenue Service. He testified he did not consider the Schiffner trust to be a separate legal entity and there was no distinction between borrowing from Schiffner and borrowing from the trust. When asked to describe the types of trusts that would have a separate legal identity, he stated they would have a separate tax identification number. The hearing officer specifically asked Tizzano whether, "prior to the death of

Mr. or Mrs. Schiffner, the assets in the trust have no different character than they would if this [sic] were not in the trust," and Tizzano answered, "correct." Tr. (Nov. 14. 2005) at 149, ll. 24-25; Tr. at 150, ll. 1-3. Schiffner's own testimony was that the trust was indistinguishable from his individual assets. He stated that the loan payments were made out of the trust accounts because it was the account he and his wife regularly used to pay daily bills and they do not use another checking account. Until his death, the Schiffner trust is indistinguishable from Schiffner individually.

¶25 Exhibits presented at the hearing also support a finding that Holcomb was dealing with Schiffner in his individual capacity. First, the cashier's checks given to Holcomb had no indication that the loans came from anyone other than Schiffner personally. Second, Holcomb always paid back the loans to Schiffner directly and not to the Schiffner trust or to the marital community.

¶26 The hearing officer concluded, and the Board agreed, that Holcomb's attempt to "narrowly defin[e] his represen-tation" of Schiffner individually and "refram[e] his loans as coming from the Schiffner marital community or their community's trust account rather than his client" was unconvincing. FFCL at 9, ¶ 15. The hearing officer reasoned that to allow a lawyer to do so would "give any lawyer who entered into business transactions with a client an imme-diate defense any time the client was married and the lawyer did not represent both spouses." FFCL at 10, ¶ 15. He also found Holcomb's claims that the Schiffner trust is not Schiffner's "alter ego" unpersuasive given testimony from Tizzano and the fact that Holcomb did not review the trust agreement prior to entering into the transactions with Schiffner. FFCL at 10, ¶ 18.

¶27 We conclude that the findings of fact support the hearing officer's and Board's conclusion that Holcomb en-gaged in transactions with a client when he obtained the loans from Schiffner drawn on funds from Schiffner's revo-cable trust.

## 2. *The loan transactions violated former RPC 1.8(a)*

¶28 Former RPC 1.8(a) prohibits a lawyer from entering into a business transaction with a client unless the transaction and terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client, the client is given a reasonable opportunity to seek advice of independent counsel regarding whether he or she should enter into the transaction with the lawyer, and the client consents.

¶29 Because this court agrees that Holcomb engaged in transactions with a client when he obtained loans from Schiffner's revocable trust, we consider those transactions prima facie fraudulent. *See In re Disciplinary Proceeding Against Haley*, 157 Wn.2d 398, 406, 138 P.3d 1044 (2006) (*Haley* II). The lawyer has the burden of showing that the transactions were not unethical. *Id*. The lawyer must show that " ' "(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger." ' " *Id*. at 406-07 (quoting *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 164, 896 P.2d 1281 (1995) (quoting *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983))).

¶30 The hearing officer found that Holcomb did not discuss payment of interest, fees, or penalties with Schiffner. Holcomb did not advise Schiffner that his interests might conflict with Schiffner's interests. Holcomb failed to prepare written promissory notes for any of the loans, setting out their terms and providing for interest, fees, and penalties. None of the loans were secured. Several of the payments were late or the checks did not clear the bank, and Schiffner bore the consequences of any bank charges. Schiffner expressed concern that if he stopped loaning funds to Holcomb, his case would suffer. Holcomb does not meet his burden under *Haley* II of showing that he

did not exert undue influence over Schiffner, that Schiffner would have received the same advice from a disinterested lawyer, or that Schiffner would have received no greater benefit if he had dealt with a stranger. Holcomb merely argues that because he represented only Schiffner individually and not the Schiffner trust or the Schiffner marital community, there was no conflict of interest. At oral argument, counsel for Holcomb conceded that if the court determined there was an attorney-client relationship, Holcomb did not satisfy the requirements of former RPC 1.8(a).

¶31 We conclude the findings of fact support the hearing officer's and Board's conclusion of law that Holcomb violated former RPC 1.8(a) by entering into loan transactions that were not fair and reasonable to Schiffner, for which terms were not fully disclosed and transmitted in writing to Schiffner, and for which Schiffner was not given a reasonable opportunity to seek independent advice of counsel.

B.   The hearing officer and Board correctly concluded that Holcomb violated former RPC 1.7(b)

¶32 Former RPC 1.7(b) prohibits a lawyer from representing a client if the representation of the client may be materially limited by the lawyer's own interests unless the lawyer reasonably believes the representation will not be adversely affected and the client consents in writing after consultation and full disclosure.

¶33 Holcomb argues his representation of Schiffner was not materially limited because he was representing Schiffner "at arms length" from the separate entity from which he was obtaining the loans. Reply Br. at 5. The WSBA argues that Holcomb's advice to Schiffner not only could have been compromised by the loan transactions, it actually was compromised because Holcomb continued to pursue the EEOC matter on Schiffner's behalf long after it was clear that Schiffner had no case. The WSBA argues that Holcomb's lack of candor was demonstrated by the fact that after Holcomb withdrew, Schiffner consulted another

lawyer who told Schiffner he had no case. The WSBA also points to Schiffner's testimony at the hearing that he was concerned he was being used as a "cash cow[ ]" and the representation could be affected if he stopped making the loans. Tr. (Nov. 14, 2005) at 70.

¶34 There is substantial evidence in the record to support the hearing officer's and Board's conclusion that Holcomb violated former RPC 1.7(b). The record indicates that Holcomb admittedly acted in his own interests rather than in Schiffner's when he failed to repay the last loan of $1,800 for over a year because he was repairing his septic system.

¶35 We conclude the findings of fact support the hearing officer's and Board's conclusions of law that Holcomb violated former RPC 1.7(b) by representing Schiffner while using him as a source of funds for his own purposes.

C.  The Board correctly concluded that the proper sanction for Holcomb's violations is a six month suspension

¶36 Washington has adopted the ABA *Standards* when imposing sanctions in attorney disciplinary proceedings "as a basic, but not conclusive, guide." *Whitney*, 155 Wn.2d at 468. We adopted the ABA *Standards* to promote consistency in disciplinary sanctions. *In re Disciplinary Proceeding Against Heard*, 136 Wn.2d 405, 424, 963 P.2d 818 (1998).

¶37 When determining the proper sanction, the Board conducts a two-step process. *In re Disciplinary Proceeding Against Blanchard*, 158 Wn.2d 317, 331, 144 P.3d 286 (2006). First, it determines the presumptive sanction by considering the ethical duty the attorney violated, the attorney's mental state, and the harm caused by the attorney's conduct. *Id.* "The lawyer's mental state may be one of intent, knowledge, or negligence." ABA STANDARDS std. 3.0, cmt. at 25. The harm caused may be "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct." ABA STANDARDS, Definitions at 7. Second, the Board determines if

the presumptive sanction should be modified by applying any applicable aggravating or mitigating factors. *Blanchard*, 158 Wn.2d at 331.

¶38 This court does not "lightly depart from recommendations shaped by [the] experience and perspective" of the Board. *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983). We adopt the Board's sanction "unless we are able to articulate specific reasons for adopting a different sanction." *Id.* at 95. Nevertheless, "the ultimate responsibility for determining the nature of discipline rests with this court and not the [Board]." *Id.*

### 1. *The presumptive sanction is six months*

¶39 The parties agree that ABA *Standards* standard 4.3 governs sanctions for conflict of interest violations. They dispute only whether standard 4.32 should be applied, which requires a finding that the lawyer acted knowingly and that the client was injured.

¶40 Holcomb argues that, if his actions were unethical at all, they were merely negligent and the appropriate sanction is admonishment because, at most, this was an "isolated incident in [his] almost 40 years of practice." Br. of Appellant at 19. He attempts to distinguish his case from *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d 393, 98 P.3d 477 (2004), asserting that in *Egger* there was no question that the lawyer had represented two clients in the same transaction and the amount of the transaction was substantial. He also attempts to argue that even if the court finds that the Schiffner trust and the marital community are alter egos of Schiffner individually, Holcomb did not realize they were at the time so his actions could not have been knowing. Br. of Appellant at 20.

¶41 The WSBA argues that this court has found that a lawyer acted knowingly where he or she "knew *or should have known* that a conflict existed." Answering Br. of WSBA at 21 (emphasis added) (citing *Egger*, 152 Wn.2d at 416). It argues that Holcomb not only knew he was asking a client to loan him money, he did so on 24 separate occasions. It

further argues that Holcomb "knew that he had not fully disclosed his precarious financial situation, and knew that he had not advised his client to seek advice of independent counsel." *Id.* at 21-22.

### a. Holcomb acted knowingly

¶42 The ABA *Standards* defines " '[k]nowledge' " as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA STANDARDS, Definitions at 7. The ABA *Standards* defines " '[n]egligence' " as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.* The determination of whether a lawyer acted knowingly or negligently is a factual one and we give great weight to the hearing officer's finding. *In re Disciplinary Proceeding Against Longacre*, 155 Wn.2d 723, 744, 122 P.3d 710 (2005) (citing *In re Disciplinary Proceeding Against Anschell*, 149 Wn.2d 484, 501, 69 P.3d 844 (2003) (*Anschell* II)).

¶43 Holcomb did not challenge the hearing officer's findings of fact that he "asked for and received multiple short term loans." FFCL at 6, ¶ 3. Nor did he challenge the findings that he did not advise the Schiffners that his interests might conflict with theirs and that they could seek the advice of independent counsel "regarding whether they should loan him the money he was requesting." FFCL at 7, ¶ 6. The hearing officer concluded that Holcomb "knew he was seeking to borrow money from a client." FFCL at 11, ¶ 22. He found that Holcomb "knowingly failed to *avoid* the conflicts of interest with his client." FFCL at 11, ¶ 23 (emphasis added).

¶44 Holcomb's argument that he did not act knowingly is dependent on his claim that he lacked a fundamental understanding that the trust and marital community were the alter egos of his client when he obtained the loans and that he had no duty to inquire into the nature of the trust.

¶45 Because we reject that claim, this argument collapses. The facts support the conclusion that Holcomb knowingly requested a loan from Schiffner before he even knew of the existence of the trust. Further, our definition of "knowledge" includes the requirement that the lawyer *should have known* that a conflict existed. *Egger*, 152 Wn.2d at 416.

¶46 We affirm the hearing officer's and Board's finding that Holcomb acted knowingly because he should have known that a conflict existed when he requested the loans from his client without knowing of the trust and he should have inquired into the terms of the trust when he learned of it. Had he done so, he would have known the trust was a revocable one used by the Schiffners for their everyday expenses.

b. Holcomb's misconduct caused injury to Schiffner

¶47 The ABA *Standards* defines " '[i]njury' " as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." ABA STANDARDS, Definitions at 7. The ABA *Standards* defines " '[p]otential injury' " as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." *Id.*

¶48 Holcomb did not challenge the hearing officer's findings of fact that Holcomb did not pay interest, fees, or penalties to Schiffner for any of the loans. He also did not challenge the hearing officer's findings that Holcomb did not set out the terms of the loans in a promissory note. Based on these factual findings, the hearing officer concluded that there was actual pecuniary harm because the loans were not fair or reasonable to Schiffner—noting in particular that the loans did not earn interest and Schiffner

was not reimbursed for fees or penalties he paid. He also concluded that because Holcomb was financially compromised, there was potential for injury to the public because his judgment could be compromised. The hearing officer noted that a lawyer could be led to "use client resources to survive personal, short-term financial problems at the expense of those clients." FFCL at 12, ¶ 28.

¶49 We affirm the hearing officer's and Board's finding that Holcomb caused actual and potential injury to Schiffner. Because we affirm the findings of the Board that Holcomb acted knowingly and that he caused actual and potential injury to Schiffner, we conclude that the hearing officer and Board correctly determined that the presumptive sanction in this case was suspension under ABA *Standards* standard 4.32.

2. *Application of aggravating factors*

¶50 In his initial brief to this court, Holcomb merely asserted that the evidence had not established the aggravating factors found by the hearing officer without offering any evidence to support his assertion. In his reply brief, Holcomb responded to arguments the WSBA raised in its brief as set out below.

a. Dishonest or selfish motive

¶51 The WSBA contends the hearing officer and Board properly cited dishonest or selfish motive because Holcomb used his client's funds for his own purposes, delayed repayment of the last loan for more than a year, and needed to borrow from his client due to his precarious financial circumstances. Holcomb, citing *Heard*, 136 Wn.2d 405, argues that the factor of dishonest or selfish motive is generally applied only where the lawyer has mishandled client funds or property and that the WSBA did not cite a case that indicates otherwise.

¶52 *Heard* is a poor example for our analysis of the dishonest or selfish motive aggravator because *Heard* did not discuss that aggravator in detail. Other cases

indicate that what we look for when we evaluate this factor is whether the lawyer intends to benefit financially or deceive the court. *See, e.g., In re Disciplinary Proceeding Against Poole,* 156 Wn.2d 196, 224, 125 P.3d 954 (2006) (attorney falsified documents to mislead for his own benefit); *In re Disciplinary Proceeding Against Dynan,* 152 Wn.2d 601, 621, 98 P.3d 444 (2004) (no selfish motive where benefit was not received by the attorney being sanctioned). Holcomb has not challenged the hearing officer's and Board's factual findings that he sought the loans from his client because he was unable to find funding elsewhere and was having cash flow problems. These facts support the conclusion that he sought to benefit directly from his client.

¶53 We conclude that the hearing officer and Board properly applied the aggravator of dishonest or selfish motive to Holcomb's presumptive sanction.

b. Multiple offenses

■■■ ¶54 The WSBA, citing *Poole,* 156 Wn.2d at 225, argues the factor of multiple offenses is proper because the hearing officer and Board found two counts of misconduct over two years. Answering Br. of WSBA at 25. Holcomb asserts that the multiple offense factor does not apply because his loans are more appropriately viewed as a "continual extension of credit," rather than individual short term loans. Reply Br. at 6-7.

¶55 The WSBA's argument is more persuasive on this factor. Holcomb's argument is undermined by the fact that the terms of the loans are undocumented and he did not challenge the hearing officer's findings of fact in that regard. The hearing officer found that Holcomb "asked for and received *multiple short term loans.*" FFCL at 6, ¶ 3 (emphasis added). The hearing officer expressly referred to the transactions in the plural throughout the findings, referring to them variously as "loans," "repayments," or "payments." FFCL at 7, ¶¶ 4-5, 7; FFCL at 8-9, ¶¶ 8-13. Further, as the WSBA notes, the hearing officer and Board found two counts of misconduct.

¶56 We conclude that the hearing officer and Board properly applied the aggravator of multiple offenses to Holcomb's presumptive sanction.

c.  Refusal to acknowledge wrongful nature of conduct

¶57 The WSBA, citing *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 196 n.8, 117 P.3d 1134 (2005), argues that the aggravator of refusal to acknowledge the wrongful nature of conduct is properly applied to Holcomb because he does not deny that he obtained the loans from Schiffner—he only denies that it was wrongful. Answering Br. of WSBA at 26. The WSBA, citing *Dynan*, 152 Wn.2d at 621 and *Anschell II*, 149 Wn.2d at 513-14, also argues Holcomb rationalized his misconduct and rationalization does not allow a lawyer to evade this aggravator. Answering Br. of WSBA at 26. Holcomb argues this factor does not apply because he did not engage in transactions with a "client" and, therefore, there is nothing "wrongful" for him to acknowledge. Reply Br. at 7.

¶58 The WSBA's reliance on *Kronenberg* and *Dynan* is misplaced. *Kronenberg* involved a lawyer who admitted that he bribed and tampered with a prosecution witness in a child rape case but claimed his actions were not wrongful. 155 Wn.2d at 191. We questioned use of the factor where the lawyer appeals on the basis that the acts did not occur, but we acknowledged it was appropriate where the lawyer admits committing the acts but denies they were wrongful. *Id.* at 196 n.8. That analysis was merely dicta, however, because the parties did not argue the issue. *Id.* In *Dynan*, we determined an attorney accused of falsifying court declarations for attorney fees was rationalizing misconduct rather than acknowledging misconduct and trying to explain it away as sloppiness. 152 Wn.2d at 621 (citing *Anschell II*, 149 Wn.2d at 513-14). Here, Holcomb claims he did not engage in transactions with a client. He does not assert that he engaged in transactions with a client but they were not wrongful as in *Kronenberg*. He also does not try to rationalize improper conduct as an error, as in *Dynan*.

¶59 We conclude that the hearing officer and Board improperly applied the aggravator of refusal to acknowledge the wrongful nature of conduct to Holcomb's presumptive sanction.

d.  Substantial experience in the practice of law

¶60 The WSBA argues Holcomb's substantial experience in the practice of law is an aggravator because he "repeatedly crossed the line here and steadfastly refuses to admit a boundary existed." Answering Br. of WSBA at 27. Holcomb argues his substantial experience in the practice of law should not be considered an aggravating factor because a complaint has never been lodged against him during the period he has been in practice. Neither party cites any case law to support their arguments about how this factor should be applied. The hearing officer merely noted the length of time Holcomb has been in practice without indicating why or how he was applying the factor.

¶61 The fact that a complaint has never been lodged against Holcomb before does nothing to contradict the facts found by the hearing officer and Board. The fact that Holcomb has been practicing for so many years suggests that he should have known that a transaction with a client could represent a conflict of interest.

¶62 We conclude the hearing officer and Board properly applied the aggravating factor of substantial experience in the practice of law to Holcomb's presumptive sanction.

e.  Indifference to making restitution

¶63 Lastly, the WSBA argues that the Board improperly struck the aggravating factor of indifference to making restitution. The Board found that Schiffner did not request restitution. The WSBA argues that the client should not be required to request restitution when he or she has been injured by the lawyer's knowing misconduct. Holcomb does not respond to this argument.

¶64 "We give greater consideration to the Board's recommended sanction than to that of the hearing

officer because 'the Board is the only body that hears the full range of disciplinary matters.'" *In re Disciplinary Proceeding Against Carpenter*, 160 Wn.2d 16, 23, 155 P.3d 937 (2007) (quoting *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 677, 105 P.3d 976 (2005)). The Board is correct that there is no evidence in the record that Schiffner requested restitution.

¶65 We conclude the Board properly struck the aggravating factor of indifference to making restitution.

### 3. *Application of mitigating factors*

¶66 The WSBA proposed, and the hearing officer adopted, two mitigating factors. Neither party contests those two factors: (a) absence of a prior disciplinary record and (c) personal or emotional problems. ABA STANDARDS std. 9.32.

¶67 The hearing officer rejected four mitigating factors that Holcomb proposed: (b) absence of a dishonest or selfish motive, (d) timely good faith effort to satisfy the consequences of any perceived misconduct, (e) full and free disclosure to the Board or cooperative attitude toward the proceedings, and (g) character or reputation. ABA STANDARDS std. 9.32. Holcomb now argues the mitigating factors of (b) absence of dishonest or selfish motive and (g) character and reputation should be applied. He argues he did not abuse a relationship with a client, mishandle funds, or convert property. He also argues his unrebutted testimony demonstrates his character and reputation. The WSBA argues that we should reject Holcomb's arguments regarding the mitigating factors because he fails to cite any authority or facts to support his argument and ignores the evidence.

¶68 The hearing officer already had determined that Holcomb had a dishonest or selfish motive—which was to protect his own financial situation. It was, thus, appropriate for the hearing officer not to find simultaneously that there was an absence of a dishonest or selfish motive. Regarding Holcomb's character and reputation, the WSBA

is correct that Holcomb did not provide any evidence to support this factor except his own assertions.

¶69 The WSBA, citing *Christopher*, 153 Wn.2d at 684, also argues the hearing officer and Board properly discounted the mitigating factor of personal and emotional problems because Holcomb failed to demonstrate a connection between his wife's medical problems and his misconduct. Answering Br. of WSBA at 29. It also argues, citing *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 774, 801 P.2d 962 (1990), that Holcomb's personal financial problems are not appropriate as a mitigating factor. Answering Br. of WSBA at 29. The WSBA is correct that we require a connection between the asserted problem and the misconduct, and that personal financial problems are generally not considered mitigators. *Christopher*, 153 Wn.2d at 684; *Curran*, 115 Wn.2d at 774 (citing *In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 748, 790 P.2d 1227 (1990)).

¶70 We conclude that the hearing officer and Board correctly determined the mitigating factors.

### 4. *Effect of aggravating and mitigating factors*

¶71 The hearing officer found six aggravating factors and two mitigating factors.[9] Based on this, he concluded "the aggravating factors significantly outnumber and outweigh the mitigating factors" and recommended a suspension of one year. FFCL at 14, ¶ 36. The Board found four aggravating factors and two mitigating factors.[10]

---

[9] The hearing officer found that the aggravating factors of (b) dishonest or selfish motive; (d) multiple offenses; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution applied. ABA STANDARDS std. 9.22. The hearing officer found that the mitigating factors of (a) absence of prior disciplinary record and (c) personal or emotional problems applied.

[10] The Board adopted the hearing officer's recommendation but struck the aggravating factors of (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process and (j) indifference to making restitution.

Based on this reduction, the Board found that "in view of [striking two aggravating factors], the aggravating factors do not *significantly* outweigh the mitigating factors." Board Order at 2 (emphasis added). The Board then sanctioned Holcomb for the presumptive suspension of six months. This court found three aggravating factors and two mitigating factors.[11] While the aggravating factors still outweigh the mitigating factors, we agree with the Board that they do not *significantly* outweigh the mitigating factors. Thus, we adopt the presumptive sanction of six months.[12]

### 5. *Proportionality and unanimity*

¶72 "We review the proportionality of sanctions only if the issue is raised by the attorney who is being disciplined." *Whitney*, 155 Wn.2d at 469 (citing *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 758, 108 P.3d 761 (2005) (citing *Noble*, 100 Wn.2d at 95-96)).

¶73 Holcomb does not specifically cite *Noble*, but he argues that the sanction recommended by the hearing officer and Board is disproportionate as compared to cases that involved multiple instances of misconduct or in which the client suffered actual injury. He cites the following cases: *Egger*, 152 Wn.2d at 420 (six month suspension for

---

[11] We find that the aggravating factor of (g) refusal to acknowledge wrongful nature of conduct does not apply. ABA STANDARDS std. 9.22.

[12] The dissent argues that Holcomb's suspension for six months is not warranted because the Board's initial determination "found the aggravating factors did not outweigh the mitigating factors. With one less aggravator, and beginning at the presumptive sanction of six months, we are left with a conclusion that the mitigating factors do outweigh the aggravating factors." Dissent at 596. However, the dissent misconstrues what the Board stated. The Board did not find that the aggravating factors did not outweigh the mitigating factors; it found that "the aggravating factors do not *significantly* outweigh the mitigating factors." Board Order at 2. The Board cited in a footnote the hearing officer's conclusion for recommending a one year suspension and departing from the presumptive sanction of six months because the aggravating factors *significantly* outweighed and outnumbered the mitigating factors. Determining that the aggravators do not significantly outweigh the mitigators does not equate to a finding that the mitigators and aggravators were balanced. We still find three aggravating factors and two mitigating factors, none of which carry more weight than another in Holcomb's case. Beginning with the presumptive sanction of six months, the mitigating factors do not now weigh in favor of a downward departure.

conflict of interest related to loan transaction between two clients); *In re Disciplinary Proceedings Against Johnson*, 118 Wn.2d 693, 700-01, 826 P.2d 186 (1992) (60 day suspension and 2 year probation for obtaining $30,000 in loans supported by promissory note and deed of trust); *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285-87, 66 P.3d 1069 (2003) (disbarment for preparing will naming lawyer as beneficiary); *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 499-500, 998 P.2d 833 (2000) (one year suspension for having sex with marriage dissolution client); and *In re Disciplinary Proceeding Against Haley*, 156 Wn.2d 324, 343-44, 126 P.3d 1262 (2006) (*Haley* I) (reprimand for communicating with a party represented by another lawyer while acting pro se). Holcomb argues that, in contrast to those cases, his record is unblemished and the WSBA failed to show that Schiffner incurred any actual injury, but he does not otherwise explain in what way his case differs from those.

¶74 The WSBA argues that because none of the cases Holcomb cites involved "ongoing" loans with clients, they are not comparable. Answering Br. of WSBA at 31-32. It notes that the presumptive sanction in all the cases Holcomb cites was suspension[13] and the court imposed a sanction less than suspension only in *Haley* I. 156 Wn.2d at 342. The WSBA contends this case is more comparable to *McMullen*. McMullen negotiated two loans totaling $40,000 with a vulnerable client and, like Holcomb, did not disclose that he was in a precarious financial situation. *McMullen*, 127 Wn.2d at 155-57. The hearing officer and Board concluded that McMullen had violated RPC 1.7 and RPC 1.8 and the presumptive sanction was suspension. *Id.* at 160-61. After applying six aggravating factors and no mitigators, it found that McMullen should be disbarred. *Id.* This court eliminated two of the six aggravators and applied two mitigators. *Id.* at 170-71. It then reduced McMullen's sanction to a one year suspension on the ground that dis-

---

[13] Actually, the presumptive sanction in *Miller* was disbarment. 149 Wn.2d at 282.

barment was disproportionate as compared to other similarly situated cases. *Id.* at 171-72.

¶75 The cases Holcomb cites do not clearly demonstrate that a six month suspension for obtaining 24 loans, each for between $750 and $3,500 and cumulatively totaling $52,300, from a client without benefit of a promissory note, interest payments, or disclosure of the lawyer's dire financial condition is disproportionate. Contrary to Holcomb's claim, this case did involve multiple instances of misconduct because the hearing officer and Board concluded that he obtained multiple loans from Schiffner. It also involved actual injury because all of the loans Holcomb obtained from Schiffner were interest free and contained no provisions for reimbursement of fees and penalties.

¶76 In particular, Holcomb's claim that *Johnson* warrants a lesser sanction in his case is not convincing. In *Johnson*, an attorney failed to represent to a client his precarious financial situation when he obtained loans from his client. 118 Wn.2d at 699-700. The court applied a presumptive six month sanction under ABA *Standards* standard 4.32. *Id.* at 705. The court then applied three aggravating factors: selfish motive, multiple offenses, and vulnerability of the victim. *Id.* at 706. The court severely discounted the vulnerability factor as it was based on trust of the client, a factor that is present in every attorney-client relationship. *Id.* The court also applied three mitigating factors: lack of prior disciplinary record, good character and reputation, and cooperation in the investigation. *Id.* In *Johnson*, the aggravating factors did not substantially outweigh the mitigating factors, as they do in Holcomb's case. Additionally, the court in *Johnson* was "reluctant to suspend Mr. Johnson for such a long period that restitution to the [client], which [had been] fairly consistently paid, [would] become unlikely," a factor not present in Holcomb's case. *Id.* at 707.

¶77 We conclude that Holcomb's sanction was not disproportionate to other cases similarly situated.

■ ¶78 "The court will generally adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other cases or the Board was not unanimous in its decision." *Haley* I, 156 Wn.2d at 339. The Board's recommendation of a six month suspension in this case was not unanimous, but because the one dissenting member recommended adopting the hearing officer's higher recommendation of a one year suspension, the Board's recommendation of a six month suspension is entitled to deference. *See Noble*, 100 Wn.2d at 94.

## IV. CONCLUSION

¶79 We conclude that the hearing officer and Board properly determined that Holcomb violated former RPC 1.8(a) and former RPC 1.7(b). For these violations, we impose a six month suspension as recommended by the Board.

ALEXANDER, C.J., and MADSEN, BRIDGE, and OWENS, JJ., concur.

¶80 C. JOHNSON, J. (dissenting) — The majority erroneously upholds a six month suspension recommendation, failing to properly analyze the misconduct in the context of the rules violated, former RPC 1.8(a) (1993 & 2000) and former RPC 1.7(b) (1995). The majority correctly concludes that former RPC 1.8(a) was violated here, where the attorney engaged in prohibited financial transactions with a client. The majority fails to recognize that no facts, other than those supporting the former RPC 1.8(a) violation, exist which independently support a violation of former RPC 1.7(b). Also, by summarily adopting the disciplinary board's decision, the majority fails to meaningfully analyze the aggravating and mitigating factors. While suspension is appropriate in this case, the period of suspension should be reduced to 60 days.

¶81 In a situation like the one presented here, where the conduct implicates more than one rule, we should recognize

this as a factor in weighing the severity of the misconduct. Here, as implicitly recognized by the majority, no evidence exists independently supporting a violation of former RPC 1.7(b). Perhaps we should conclude that one course of conduct can, and perhaps does in certain situations, implicate more than one rule. Where that occurs, however, the misconduct should be viewed in light of the singular course of conduct and weighed as a factor in determining the seriousness of the misconduct. Although the majority correctly determines that the appropriate sanction in this case is suspension, the multiple rule violations should not be a factor in determining the length of suspension.

¶82 The error committed by the board, and summarily adopted by the majority, is beginning the sanction determination at the wrong place. The board reviewed the hearing examiner's recommendation of a one year suspension and used this as a starting point. The one year suspension was then reduced by the board based on a finding of no specific loss to the client and striking three aggravating factors. As the majority recognizes, but fails to properly analyze, the presumptive period of suspension starts at six months. From there the aggravating and mitigating factors should be analyzed to determine whether the period of suspension should be increased or decreased.

¶83 The majority correctly concludes that the aggravating factor of refusal to acknowledge the wrongful nature of the conduct is not supported by the facts of this case. The board, in concluding that six months was the appropriate sanction, found the aggravating factors did not outweigh the mitigating factors. With one less aggravator, and beginning at the presumptive sanction of six months, we are left with a conclusion that the mitigating factors do outweigh the aggravating factors. In this situation, the period of suspension should be reduced from the presumptive sanction.

¶84 This case is similar to that of *In re Disciplinary Proceedings Against Johnson*, 118 Wn.2d 693, 826 P.2d 186 (1992), where we imposed a 60 day suspension where the

lawyer engaged in inappropriate financial dealings with a client; Johnson borrowed money from a client when he was in a difficult financial situation. In *Johnson*, we began our analysis at the presumptive sanction of six months and, after consideration of aggravating and mitigating factors comparable to Holcomb's case, found a reduction in the sentence was appropriate. *Johnson*, 118 Wn.2d at 705. Holcomb should receive a proportional sanction where ethical violations are based on similar factual scenarios.

¶85 In light of our cases, and because fewer aggravators exist than found by the Board, the appropriate sanction should be reduced to a 60 day suspension.

SANDERS, CHAMBERS, and J.M. JOHNSON, JJ., concur with C. JOHNSON, J.

Reconsideration denied March 14, 2008.